TOM O'BRIEN v. THE STATE.

No. 4420. Decided March 3, 1909.

**Keeping Disorderly House—Intoxicating Liquors—Insufficiency of the Evidence—General Reputation.**

Where upon trial for keeping a disorderly house, in which spirituous and other liquors were kept for sale without license, the conviction rested alone upon general reputation, which was itself meager, and there was no evidence that defendant ever sold or offered to sell intoxicating liquors or that he had such in his possession, or that the description of the building, its furnishings and equipment was such as to indicate that he was engaged in such business, the conviction could not be sustained. Distinguishing Joliff v. State, 53 Texas Crim. Rep., 61.

Appeal from the County Court of Grayson. Tried below before the Hon. J. W. Hassell.

Appeal from a conviction of keeping a disorderly house, in which spirituous and other liquors were sold; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged in the County Court of Grayson County with the offense of keeping a disorderly house; that is, a house in which spirituous, vinous and malt liquors were sold and kept for sale without a license first having been obtained under the law to retail such liquors.

In view of the disposition we are to make of the · case, we will not discuss but one question, and that is the sufficiency of the evidence to sustain the conviction. It was shown that appellant obtained no license in Grayson County to retail spirituous, vinous and malt liquors. It was shown, perhaps with sufficient certainty, that appellant was in such relation and control of the ·house as to bring him under the terms of the statute as the owner, lessee or tenant thereof. There was no evidence from any source that he had at any time, since the act under. which he was prosecuted went into effect, ever sold or offered for sale intoxicating liquors. It is not shown nor, is there any evidence tending to show that he at any time since the act in question went into effect ever had in his possession any intoxicating liquors. There was no evidence that he had an internal revenue license as a retail liquor dealer, nor was the description of the building, its furnishings, furniture and equipment, such as would indicate particularly that he was engaged in the business or any fact, in this respect, inconsistent with his claim that it was a restaurant. There was no evidence of any rowdyism, noise, drunkenness or any of the ordinary conduct to be expected to be carried on about a place of business of this kind. The ·proof upon which the conviction rests is that of general reputation and that alone, and this proof is very fragmentary and slight. For instance, the witness J. B. Howard, who was a deputy sheriff, testifies that he was unable to say which was the general reputation in Denison of the house in question. M. F. Kidd, another deputy sheriff, testified that he was unable to say what the reputation of the house was or whether it had the reputation of being a house in which intoxicating liquors were sold. J. · C. Denton testified that he was acquainted with the general reputation of the house in question, and that it had the reputation of being a place where whisky was sold. It seems that appellant's place of business was located at 325 Main Street, in Denison. J. W. Hendricks, who lived in Denison, and whose place of business was 411 Main Street, stated that he was not acquainted with nor could he testify as to what was the general reputation of the house or building in question. J. D. Knaur testified that he lived in Denison, and that the reputation of the house in question was that it was a place where whisky was sold. Such also was the testimony of H. Alexander, J. O. Jackson, and M. C. Johnson.

As to the character of the furniture in the building, the witness

Howard testifies as follows: "There is a restaurant in the front of the building. There was a counter, wooden contrivance, shelf, counter and bench, twelve or fourteen feet long and about two feet wide. It was on the east side of the room. There was a shelf against the wall and a glass above it—a mirror, and there was a wooden box. It was a wooden box with a cover on it on top. It was at the south end of the shelf. I think there was a cash register on the shelf. It was on the shelf that was against the wall."

The charge of the court pertinently and aptly submitted the issue to the jury. In the fifth paragraph of the court's charge the jury were instructed as follows: "Evidence has been introduced before you with reference to the general reputation of the house in question. You are instructed that the general reputation of the house, as a disorderly house, if you believe that such general reputation is proved by the evidence beyond a reasonable doubt, will not warrant the conviction of the defendant on the charge contained in the indictment of keeping or being concerned in keeping such house as owner, lessee or tenant, but before the defendant can be convicted of keeping said house, if the same was a disorderly house, as the owner, lessee or tenant of same, the evidence must directly connect him with the keeping of said house as such owner, lessee or tenant." Evidently the learned trial judge must have acted with reference to and based his conclusion in overruling appellant's motion for a new trial upon the opinion of this tribunal in the case of Joliff v. State, 53 Texas Crim. Rep., 61, 109 S. W., 176. In that case we had occasion to discuss the admissibility of proof of general reputation in a charge of this sort. An inspection of the opinion in that case will show that Joliff had obtained a retail liquor dealer's license from the United States Internal Revenue Department, and also that he had whisky on hand and that sales were made at the house in question. The motion for rehearing filed in that case challenged the admissibility of the evidence of general reputation at all, and in discussing the matter we said: "It is urged that the court erred in admitting evidence of the general reputation of the house alleged to have been kept by appellant. The contention of appellant is, substantially, that proof of general reputation in a charge similar to that made in this case is only admissible in cases where the repute of the house is an essential element of the crime charged, and that unless the repute of the house is the essence of the offense charged it is not admissible. It has been the holding of this court, time out of mind, that general reputation is admissible in cases where parties are charged with keeping a disorderly house, though independent evidence must appear that the person charged was engaged in keeping such house as owner, lessee or tenant. This construction of the disorderly statute was uniform and well settled before the passage of the act

considered. We think when the lawmakers came to add to the disorderly house statute the matters not contained in it, wherein they denounced as a disorderly house one kept for the sale of intoxicating liquors without license, that they must have intended that proof by reputation in respect to such houses would be admissible on the same basis as had theretofore been the rule in this State." The opinion of the Joliff case, supra, does not go beyond the holding that proof of general reputation in this character of case is admissible, and this is so, as we there held, because the statute in reference to disorderly houses had theretofore, time out of mind, received a similar construction by the courts of this State, according to which proof of general reputation as to the character of the house was held to be receivable; and therefore it was to be assumed that the Legislature intended in inserting in said disorderly house statute, a new offense, that in respect to rules of evidence the same rule of construction should apply with reference thereto. It may be that the same reasoning on which the opinion in the Joliff case was rested touching the admissibility of evidence would apply as testing its sufficiency, but this may well be doubted. In any event, as here presented, we think it would be a dangerous precedent to sustain a conviction on the proof appearing in this case. It will be seen from an inspection of the statement of facts that persons in business in the adjoining block and located near appellant's place were not advised and were not able to testify as to the reputation of the house. Even the law officers in Grayson County, charged with the administration and enforcement of the law, did not know the reputation of the house. If it was in fact a disorderly house, in that it was a place where intoxicating liquors were sold in a local option territory without a license, there were so many means and methods by which proof of this fact could be secured in addition to evidence of general reputation, that it seems unlikely that the Legislature could ever have intended that a conviction should rest on proof of general reputation alone. It would, in many cases, be easy enough, if this were the rule, on bare suspicion, to convict. The speech which Shakespeare attributes to Iago has become something of a truism, "That reputation is often got without merit and lost without deserving." There is no legislative enactment that any special weight or conclusive force should be given to such reputation, and, as stated, if the rule can apply in any case, which we doubt, under the facts of this case, we should not hesitate to say that it is insufficient.

For the reason that the evidence is, in our judgment, insufficient to sustain a conviction, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*