E. S. Morford v. The State.

No. 565.   Decided November 2, 1910.

Keeping Disorderly House—License—Intoxicating Liquors—Insufficiency of the Evidence.

In a prosecution for keeping a disorderly house for the sale of intoxicating liquors, etc., the State must show that spirituous, vinous, or malt liquors were kept for sale by the defendant without first having obtained a license; and the mere fact that one bottle of whisky was sold in the house which seemed to have been abandoned as a saloon would not be sufficient. Ramsey, Judge, dissenting.

Appeal from the County Court of Potter. Tried below before the Hon. W. M. Jeter.

Appeal from a conviction of unlawfully keeping a disorderly house for the sale of intoxicating liquors; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of keeping a disorderly house. The facts disclose that Dudley and Castleberry went into a house. Castleberry bought from appellant on the 19th of October, 1908, a bottle of what Dudley calls two percent and a bottle of whisky. The description he gives of the room would

indicate that it had all of the paraphernalia that belongs to the ordinary saloon, bar, glasses, etc. The witness further testifies he was in the place again on the 20th of October and bought a bottle of two percent or beer. The general reputation of the house was put in evidence. It is shown that appellant did not pay any State revenue license, but that there was a United States internal revenue license "pasted" up in the room. That this license was not seen until some time in the month of November after the sale occurred on the 19th of October. This license was dated either the 8th of October or 18th of October, witness was not clear, and taken out in the name of Morford and Morgan. The house had been occupied as a saloon prior to the time local option went into effect by another party. There is evidence also by the witness Winkler that he had control of the premises known as the Gem Saloon, which is the house here in question; that he had rented it from the owner, Mr. Parks, prior to the month of October, 1908, and that during that month the building was not occupied by anyone until witness sold it to John Morgan, that is, he sold furniture and fixtures in the building to Morgan and gave him a bill of sale to the property so sold, and the witness thought that Morgan did not open the place for several days after the purchase. The bill of sale was introduced in evidence and was dated October 20, 1908, and conveyed to John Morgan bar fixtures and everything belonging to Winkler, including a small house in back yard and plank fence leading from northwest corner of saloon building to the alley, for the sum of $250. That Morgan and witness went to Parks and procured his consent for Winkler to sell the goods and fixtures to Morgan, and that Morgan might assume the lease of the premises. This was the same day that bill of sale was executed. This witness says there was no business in the house at that time and had not been for some time prior to the execution of the bill of sale. That in the months of June and July there had been what he calls two percent sold there. He says when he gave up the building to Morgan it was on the 20th of October; that appellant was not working for witness on the 19th or 20th of October, and no one had possession of the property except witness. Parks testified he was judge of the Police Court of the city of Amarillo, and had been for two years, and that prior to the date that local option became effective he had the property rented to Winkler, and the terms of the lease had not expired. That local option took effect in June, 1908, and Winkler continued to pay witness rent until he sold out the fixtures and furniture within the building. This witness says he passed the property every day and knew the house was not occupied, nor was any business conducted in it where the public could enter the doors, in the forepart of October. That some time in October Winkler came to him with Morgan and asked permission to sell the furniture and fixtures he had in the building to Morgan and to let Morgan have the lease on the property. Witness agreed to it and knew at

the time the building was not being used for any purpose and was not being kept open at any time. He also testified he never leased the property to defendant Morford, and never received any rent from him; that Winkler paid the rent for October, 1908, and Morgan paid it after lease expired. This is the case on the facts.

1. It is contended, among other things, that this evidence is not sufficient to support the conviction. We are of opinion this contention is correct. The strongest conclusion to be deduced from the State's testimony is the fact that there was one bottle of whisky sold on the 19th of October, and this is all we have in the record with reference to selling intoxicating liquors. There is evidence that on the night of the 19th there was a bottle of two percent sold, and on the night of the 20th another bottle of two percent was sold. The witnesses do not testify what they mean by two percent. Concede that it is a malt beverage, there is no evidence in the record to show that appellant was ever in the house or had anything to do with it before the 19th of October, and he was shown to have been in there on two occasions—19th and 20th of October—but did not sell on the 20th. The place had been a saloon prior to the going into effect of the local option law June, 1908, and had been closed from that time until the 19th of October, except during the months of June and July when, as the witness says, two percent was sold in it. During the fall of 1908 the general reputation was that it was a place where intoxicating liquors could be bought. The witness said that this applied during the month of October. The other probative evidence is that a United States revenue license was seen in the house, taken out in the name of Morford and Morgan. Appellant's name was Morford. There is no evidence undertaking to connect appellant with the license otherwise than as stated. This license the witness saw in November and thought it was dated either the 8th or 18th of October. This may be a circumstance or fact because the house was run as a two percent selling establishment in June and July prior to the transaction here mentioned. United States revenue license runs twelve months, or from the first of July until the last of the following June. What the license was for is not disclosed otherwise than a United States revenue license. They did not undertake to show what the license was for, what was the object of issuing the license, or what business was to be carried on under it, whether it was selling intoxicants or malt beer. The fact it was posted up in the house left the jury to draw any conclusion they saw proper. There is evidence in the record to show that the bar fixtures were there and had been there for some time, and at one time used by Winkler in connection with his saloon, and that he had not moved them away. In order to constitute a violation of the disorderly house Act, under which appellant was prosecuted, it is necessary that spirituous, vinous or malt liquors be sold or kept for sale without first having obtained a license. The mere fact that one bottle

of whisky was sold in the house would not be sufficient. If the party was keeping liquors stored in the house for the purpose of selling and was selling, even the sale of one bottle would hardly be sufficient, but the mere sale of one bottle of intoxicating liquors in a house, we think, is not sufficient evidence to show that it was a disorderly house. The law requires that liquors shall be sold or kept there for sale.

2. There are some other questions raised in bills of exception, but under the view we take of the case, they are not discussed, and in fact we are of opinion that there is no such error in any of them as would require a reversal of the judgment.

For the reason indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, JUDGE (dissents).—I do not concur in the opinion that there was no evidence sufficient to support the verdict and judgment of conviction for the sale made on October 19. The testimony as to the sale of whisky on this day was positive. The house had the reputation during the month of October of being a place where intoxicating liquors were sold. It had all the indicia of a saloon, including the usual internal revenue license, and the facts strongly tend to show appellant's connection with the business.