### FRANK SULLIVAN V. THE STATE.

#### No. 1054.  Decided March 29, 1911.

#### Rehearing Denied April 26, 1911.

**1.—Keeping Disorderly House—Verbal Charge of Court—Practice on Appeal.**

Where, in the County Court, there was no exception to the court's verbal charge and no special charges requested, it will be assumed that the charge is correct.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of keeping a disorderly house for the sale of spirituous, vinous and malt liquors without license, etc., the evidence showed that the alleged house was run by the defendant as a barber shop, pool hall and restaurant, and that the house had a reputation as a disorderly house where such liquors were sold, and that whisky had been sold there, etc., and that the place was noisy and disorderly, the conviction was sustained.  Distinguishing O'Brien v. State, 55 Texas Crim. Rep., 431; 117 S. W. Rep., 133; Lockhart v. State, 58 Texas Crim. Rep., 438; 126 S. W. Rep., 575; Morford v. State, 60 Texas Crim. Rep., 190; 131 S. W. Rep., 568.

**3.—Same—Newly Discovered Evidence.**

Where the motion for new trial did not show that defendant did not know of the alleged testimony and showed no diligence whatever to procure the same, the same was correctly overruled.

Appeal from the County Court of Grayson.  Tried below before the Hon. J. Q. Adamson.

Appeal from a conviction of keeping a disorderly house for the sale of spirituous, vinous and malt liquors without a license; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

*J. L. Cobb*, for appellant.—Cited cases in opinion.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—By complaint and information it was

charged that the appellant on or about December 8, 1909, in Grayson County, Texas, "did then and there unlawfully keep and was concerned in keeping and did aid, assist and abet in keeping a disorderly house in a certain house, building, edifice and tenement then and there situated in this: That he did then and there unlawfully keep and was concerned in keeping and did aid, abet and assist in keeping said certain house, building, edifice and tenement there situate, in which spirituous, vinous and malt liquors were sold and kept for sale, without a license first having been obtained under the laws of Texas to retail such liquors and in which said appellant then and there unlawfully sold and kept for sale spirituous, vinous and malt liquors, without having first obtained a license under the laws of Texas to retail such liquors." The complaint and information were made and filed December 9, 1909. The case was not tried until November 9, 1910.

The record shows that the court gave a verbal charge. There is no exception whatever thereto, nor were any special charges requested. This court will, therefore, conclusively assume that the charge covered every phase of the case necessary or proper to be submitted. The appellant was convicted and his penalty assessed at $200 fine and twenty days in jail.

The only complaint is that the evidence was insufficient to sustain the conviction. We will, therefore, give the substance in full of the testimony. Seven witnesses, to wit: Greer, apparently a disinterested witness; Kirk, Kidd and Howard, each a deputy sheriff of Grayson County; Rich, the sheriff; Binkley, a minister of the gospel, and Stark, the constable of the precinct, each testified that they knew the general reputation of the house kept and run by the appellant, which was clearly identified as situated in Sherman, on the corner of certain streets, in Grayson County, Texas, and that the general reputation of the place was one where intoxicating liquors were sold and kept for sale. There was no dispute whatever on this point. It was also clearly shown, without dispute, that this certain house was kept and run and operated by the appellant at the time charged in the information, and for several years prior thereto in which were situated a barbershop, a pool-room where negroes resorted to play pool, and a lunch counter, all in the same building and on the same floor and that there was a door between the barbershop and the pool-room.

Charles Greer testified: That he lived in Sherman, Grayson County, Texas, on December 8, 1909, and was at appellant's place of business, designating where it was in the city of Sherman on said date. When he got there, there were several darkies laughing and talking loud; some were swearing and cursing, engaged in conversation in different parts of the place and some were playing pool. Appellant had been keeping a lunch counter in part of the house and in another part was a negro barbershop; and he also kept a pool hall therein. When he went there he was in search of whisky, but did not buy any

right then; he was talking with a negro boy named Alex, who had been working there in the house awhile before that; he did not know whether he was working there then or not. The witness was seated at the lunch counter; he got up and started away, telling Alex that he was going down to Mackey's to get some whisky; Alex said he did not have to go down there, that he could let him have some whisky and they stepped out of the door and around the corner against the side of appellant's pool-hall; he put his hand in his inside coat pocket, pulled out a half pint of whisky and he gave him a half dollar for it. The witness drank it, or most of it. At appellant's place, at times, the negroes get pretty loud and make a great deal of noise; he did not buy any whisky from appellant at that place that day.

Kirk, a deputy sheriff of Grayson County, testified: Appellant was running a negro pool-hall on December 8, 1909, and had been in the same business there for several years. "I have seen whisky and beer there—glasses and empty bottles there frequently along about December 8, 1909. About this time I had several parties to complain to me about this place being noisy and disorderly and was frequently called there about this as an officer to act in an official way."

Kidd, also a deputy sheriff of Grayson County, testified: That on December 8, 1909, he and Howard, another deputy sheriff of said county, had placed in their hands a search and seizure warrant and went to appellant's place—identifying it—for the purpose of executing the warrant. They got there late in the evening just after dark; they found the appellant there and immediately began searching the premises; they found a number of bottles of whisky and beer in different parts of the house. In the barbershop, which is a part of the building, they found some four or five bottles of whisky in a grip. In the pool-room they found several half pint bottles of whisky in a kind of safe; also some ice and several bottles of beer on it. This whisky was found behind the lunch counter in some pigeon-holes used for canned goods; they also found some four or five half pint bottles of whisky there. In the back part of the pool-room they found a great number of empty whisky bottles. Behind the lunch counter they found a number of glasses of different kinds. There were a number of negroes in there who were disorderly and intoxicated. "I have seen them drink whisky in that place and a number there that appeared to be under the influence of liquor. I never knew anyone to buy whisky there myself." They took charge of the whisky and beer found there on this occasion. No one made any claim of owning it, or claimed to own it, or know anything about it. This witness afterwards heard that a part of it had been brought from Dallas to be used in a case of sickness for Dorchester, who was sick at that time. They took the beer and whisky to the county jail. This witness did not know what became of it.

Howard, another deputy sheriff of Grayson County, testified: He and Kidd, another deputy sheriff, under a search warrant and seizure

to search appellant's place for spirituous, vinous and malt liquors, on December 8, 1909, went to appellant's house and found the place filled with negroes—some playing pool, some engaged in loud and boisterous conversation in different parts of the house. Upon searching the place they found bottles filled with whisky in different parts and in an old safe or cupboard behind the lunch counter they found some bottles filled with whisky, several bottles of beer in a vessel with ice about it. They found glasses and some whisky wrapped up in a paper grip; they found several barrels and sacks of empty whisky and beer bottles in the back end of the house; they took charge of the whisky and beer and carried it to the jail. No one claimed to own the whisky at this time. Appellant was there in charge of the place. This witness heard afterwards that they claimed the beer belonged to one Dorchester; no one that he knows of ever claimed to him to own the whisky. "Chas. Greer informed me that there was whisky kept there for sale and told me where it could be found and I went there and found it as he stated."

Rich, the sheriff of Grayson County, testified (after identifying appellant's place), and stating that appellant had run it for a number of years as a negro pool-hall and lunch counter, he stated: "I have been called there along about December 8, 1909, as an officer and have had different complaints made to me about the noise, disturbance and disorderly conduct in and about this place. I never bought any whisky there."

Rev. Binkley testified (after identifying the same place in Sherman as the negro pool-hall and lunch stand run by appellant), that he had never been in the place and never drank any whisky, he said: "But I know it to be a place of much disorder and noise."

It was agreed between the State and appellant on the trial that the barbershop mentioned is not a part of the pool-hall and set off from it by partition walls. Also that the prohibition of the sale of intoxicating liquors was in force and effect in Grayson County on December 8, 1909, and that the sale of intoxicating liquors on said date to be a violation of said law; also that no license to sell intoxicating liquors or spirituous, vinous or malt liquors in Grayson County, Texas, had been issued to the appellant for his place of business covering the said date, December 8, 1909.

This prosecution and conviction was had under articles 359 and 361, Penal Code, under the Act of April 18, 1909, p. 246. In our opinion the evidence is amply sufficient to sustain the conviction.

As stated above, the only complaint by the appellant is that the evidence is insufficient to sustain the verdict and judgment. He relies upon the O'Brien case, 55 Texas Crim. Rep., 431, 117 S. W. Rep., 133; the Lockhart case, 58 Texas Crim. Rep., 438, 126 S. W. Rep., 575, and the Morford case, 60 Texas Crim. Rep., 190, 131 S. W. Rep., 568, for reversal. This court in the O'Brien case held, and only held that a conviction under this statute could not be had by

evidence of general reputation alone. In the Lockhart case the evidence was nothing like as strong and convincing, nor to the extent of what the record in this case shows the evidence to be. In the Lockhart case this court expressly declined to hold that the evidence in that case was insufficient, though suggested that on a new trial that the evidence should be made stronger by the State. So in the Morford case, the evidence was nothing like as strong, as full nor as satisfactory as it is in this case. Even in that case the judges of the court differed as to the sufficiency of the evidence to sustain the conviction. The court, however, reversed the case on that ground. We deem it unnecessary to recite the evidence in either of these cases. They can be referred to and readily seen for that purpose. The lower court did not err in not granting a new trial on the said ground complained of.

To the motion for new trial is attached the affidavits of two persons, neither of whom were witnesses on the trial of the case. One of them was named Douglass, who swears that he was present and so was the appellant on the night of December 8, 1909, when the two deputy sheriffs, Kidd and Howard, searched appellant's house and found whisky, beer, bottles, glasses, etc., etc., therein. He says he lived in Sherman, but was not subpoenaed as a witness in the case and he does not know that the appellant knew about his testimony prior to the trial. He claims that at the time the said officers found the whisky and beer about which they testified that he told them that the whisky belonged to Dorchester and that Dorchester told the officers in his presence and in the presence of appellant that the whisky belonged to him and not the appellant, and that he had brought it from Dallas, etc. The affidavit of the other party, Carson, shows that he was conducting the barbershop connected with appellant's poolroom on the occasion on which the officers searched the house and found the whisky, beer, bottles, glasses, etc., etc., therein, and he claims that the appellant and Dorchester were both present at that time and that Dorchester claimed some of the whisky as his and that it was not appellant's. The testimony of each of these parties who made these affidavits would have been material for appellant on the trial of the case. Appellant does not show that he did not know what this testimony would be and the record clearly shows that they were both present and participated in the conversations that were had with the two searching officers at the time it was had and that the appellant was also present. No diligence whatever is shown by the appellant to procure their testimony. The lower court did not err in overruling the appellant's motion for new trial on the ground of this suggested newly discovered evidence.

There is no error pointed out and the judgment is in all things affirmed.

*Affirmed.*

[Rehearing denied April 26, 1911.—Reporter.]