### Andrew Perkins v. The State.

#### No. 1214.   Decided May 31, 1911.

**1.—Aggravated Assault—Want of Intent to Injure.**

Where, upon trial of aggravated assault, the evidence showed that the defendant's horse became uncontrollable and ran away with him in his buggy and became unmanageable when he ran against the party alleged to have been injured and hurt her, and there was no evidence that the act of the defendant was intentional, the court should have submitted the special requested instructions in accordance with these facts.

**2.—Same—Charge of Court Should Apply to the Facts.**

The charge of the court must be limited to the facts alleged.

Appeal from the County Court of Mills. Tried below before the Hon. S. H. Allen.

Appeal from a conviction of aggravated assault; penalty, a fine of twenty-five dollars.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—By complaint and information

appellant was charged with committing an aggravated assault and battery upon Mabel Venable, and that he did then and there wound and bruise Mabel Venable by running against the said Mabel Venable with his buggy and horse, and did then and there, thereby and therewith, inflict serious bodily injury upon the said Mabel Venable.

The evidence discloses that on the evening of the alleged assault appellant "got upon an uproarious and saturated drunk," and that he and others were traveling the road between the little village of Star and Center City; that they were either racing or appellant's horse had become uncontrollable and ran away with him; that during this wild performance Mabel Venable was run over, knocked down and injured. That at a short distance, after this occurrence, his horse ran the buggy against a post and there was a consequent wreck, and appellant was thrown from the buggy. John Whidden testified that he went in appellant's buggy to Long Branch, on the Star road; that appellant's horse tried to run while appellant held the lines, and he, witness, reached for the lines, and reined the horse into a post and stopped him; that he thinks appellant was drunk; that if he had not been drunk he would have stopped his horse; that they took a drink of whisky; that he rode in another buggy the rest of the way to Star; that he quit riding in appellant's buggy because he was afraid he would get hurt, as appellant could not manage his horse. This witness went to the appellant's horse and buggy by the post where the wreck occurred, and hitched the horse back to the buggy; that a line was broken, the bits out of the horse's mouth, and the cross-bar that the singletree was on was broken. Appellant himself testified that he got some whisky or alcohol at Center City; that there was four quarts of alcohol; drank some of it, but did not remember of taking but two drinks; that he did not remember anything after leaving Center City, did not remember about running over any children; that the first time he found out about the children being run over was after he had been arrested; that Langford and Preston told him about the children getting hurt; that he had no illwill or feeling against the children—never saw or heard of them before the accident; did not know their parents; that he never saw them when he ran over them, if he did run over them. It was admitted that Dr. Brooking, if present, would testify that appellant either was brought or came to his house immediately after the accident very drunk—about as drunk as a man could possibly be; so drunk he did not have any sense and could not talk, and did not seem to understand anything. It was also shown by the facts that he had been acquitted of the charge of racing, but plead guilty to a charge of disturbing the peace and drunkenness in the town of Star, being the same drunk testified to by the witnesses in this transaction. It is unnecessary to go into a detail of all the matters connected with the trip from the place where he bought whisky and got drunk to the place of running over the children and the wrecking of his buggy against the post.

The court charged the jury the terms of the statute in regard to assault, coupled with the ability to commit a battery, and included in his charge all of that statute, which includes: 1. That the person making the assault must be in such position that if not prevented he may inflict a battery upon the person assailed. 2. He must be within such distance of the party so assailed as to make it within his power to commit the battery by the use of the means with which he attempts it. Again, that it would follow that one who is, at the time of making an attempt to commit a battery, under such restraint as to deprive him of the power to act, or who is at so great a distance from the person assailed as that he can not reach his person by the use of the means with which he makes the attempt, is not guilty of an assault. But the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, and under circumstances calculated to effect that object, comes within the meaning of an assault. Then after giving the punishment for simple assault, and assault and battery, the charge gives definitions of aggravated assault, and informs the jury that such assault becomes aggravated when committed upon an officer in the discharge of his duties of his office, if it is known or declared to the offender that such person was an officer discharging an official duty. Again, he charges that it is aggravated assault when committed in a court of justice, or in a place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement. And again, he charged the jury that when a person committing an offense goes into the house of a private family, and is there guilty of an assault and battery; again, when committed upon one who is aged, and again, when committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child. Again, when the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip or cowhide, or when a serious bodily injury is inflicted upon the person assaulted; or when committed with deadly weapons under circumstances not amounting to an intent to murder or maim; or when committed with premeditated design, and by the use of means calculated to inflict great bodily injury. And when committed by any person or persons in disguise. He then informs the jury that violence does not amount to an assault or battery in the following cases: Under the exercise of moderate restraint or correction given by law to the parent of the child, the guardian over the ward, the master over his apprentice, and the teacher over the scholar. For the preservation of order in a meeting for religious, political or other lawful purposes; for the preservation of peace, or to prevent the commission of offenses; or in preventing or interrupting an intrusion upon the lawful possession of property; or in making a lawful arrest and detaining the party arrested, in obedience to the lawful order of a magistrate or court, and in overcoming resistance to such lawful order; or in self-defense, or in defense of another against an unlawful attack

offered his person or property. He then instructs the jury that if appellant on or about the time charged in the information did commit an assault and battery upon Mabel Venable, as charged, they would find him guilty. He then instructs the jury that intoxication, or temporary insanity of mind produced by the voluntary recent use of intoxicants, is not an excuse for the commission of crime; that they consider intoxication or temporary insanity produced by intoxication in mitigation of the penalty only. He also instructs the jury further, that if the defendant was traveling in reckless manner, without due regard for others, at the time Mabel Venable was injured, and that her injury was the result of such reckless traveling, even though he were in a drunken condition, he would be guilty. He further charged the jury that when an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the accused to show the accident or innocent intention. He further instructed the jury that the intended injury may be bodily pain, constraint, sense of shame, or other disagreeable emotion of the mind, and that he might be guilty, even though the person actually injured was not intended to be injured. All these charges were then followed by a charge on circumstantial evidence.

A special charge was requested to the effect that, although the defendant did drive his horse and buggy against the alleged injured party and thereby inflict the wounds and bruises as charged, still, if the jury should find that at the time defendant was not actuated by a criminal intent to commit said alleged aggravated assault, they should acquit. This special charge was refused. We are of opinion that the evidence discloses that appellant was entirely drunk, and that he was either racing with another, or that his horse became unmanageable by reason of the breaking of the lines and the bit coming out of his mouth, and ran away, and while so running ran over Mabel Venable and injured her, and in a few steps ran against a post and wrecked the buggy. Under these circumstances the court should have charged the jury with reference to the intent of appellant. While there was violence inflicted and the law will usually presume as a legal presumption that injury was intended, yet that is not a conclusive presumption, and the accused may show facts and circumstances which indicate that he did not intend to injure the party. These matters were before the jury, and they should have been charged with reference to that phase of the testimony. While appellant's conduct was reprehensible, and for which there could hardly be any excuse given, yet if his horse ran away with him, the lines were broken, or the horse became in any way unmanageable and not subject to his control, and in this condition the injured party was hurt, it would not be an assault. This phase of the law should have been given in charge to the jury. The court's charge eliminated this phase of the law and the special instruction was refused. We would also suggest that upon another trial all definitions of assault be omitted except such as called for by the information and

sustained by the facts. The charge should be limited to the facts and the allegations in the information. However reprehensible and outrageous the conduct of the accused was on this occasion, he should be tried by the law applicable to the pleadings and evidence.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*