## ANDREW PERKINS V. THE STATE.

### No. 1397. Decided February 14, 1912.

**1.—Aggravated Assault—Charge of Court—Requested Charges—Bill of Exceptions—Practice on Appeal.**

Where, upon appeal from a conviction of aggravated assault, it appeared that the defendant submitted requested charges which the court below refused, to which defendant excepted and then complained of the action of the court in his motion for new trial, without stating in any of these proceedings the necessity or reason for his requested charges, the matter can not be reviewed.

**2.—Same—Requested Charges—Practice on Appeal.**

Where, upon trial of aggravated assault, the requested charges were not so drawn as to meet the· statutory provisions under articles 51 and 52 of the Penal Code, there was no error in refusing them; besides, the matter was not properly presented for review on appeal.

**3.—Same—Rule Stated—Misdemeanor—Statutes Construed.**

Where, upon trial of aggravated assault, the court in his main charge properly applied the law to the facts, there was no error in refusing requested instructions which were not properly drafted and the court was not bound to qualify or modify them. Following Sparks v. State, 23 Texas Crim. App., 448, and other cases. Article 723, Code Criminal Procedure.

**4.—Same—Charge of Court—Practice on Appeal.**

Where the exception to the charge of the court was general and did not point out any specific error, the same could not be considered on appeal.

**5.—Same—Other Offenses.**

Upon trial of aggravated assault, the defendant could not avail himself of the fact that a similar charge on another party, growing out of the same transaction, was still pending; besides, there was no plea of former conviction or acquittal.

**6.—Same—Reading Law—Discretion of Court.**

Upon trial of aggravated assault, there was no reversible error in the court's refusal to permit defendant's counsel to read and discuss before the court the opinion of the Court of Criminal Appeals in a companion case.

**7.—Same—Drunkenness no Defense.**

Upon trial of aggravated assault the defendant's plea of drunkenness

when he committed the alleged offense was no defense. Following Evers v. State, 31 Texas Crim. Rep., 319, and other cases.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of aggravated assault, the evidence sustained a conviction, there was no error.

Appeal from the County Court of Mills. Tried below before the Hon. S. H. Allen.

Appeal from a conviction of aggravated assault; penalty, a fine of $25 and thirty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of distinct offenses: Nash v. State, 86 N. C., 650; Samuels v. State, 25 Texas Crim. App., 537; Ashton v. State, 31 Texas Crim. Rep., 482.

Upon question of court's charge on voluntary intoxication: Howard v. State, 37 Texas Crim. Rep., 494; Evers v. State, 31 id., 318; Edwards v. State, 38 id., 386.

PRENDERGAST, JUDGE.—The appellant was prosecuted in the County Court for an aggravated assault and battery on Julius Venable, was found guilty and fined $25 and thirty days confinement in the jail.

Heretofore this court reversed Perkins v. State, 62 Texas Crim. Rep., 508, 138 S. W. Rep., 133, appealed by him, which grew out of the same transaction, in which case he was convicted of an aggravated assault on Mable Venable, but the evidence as reported by the opinion in that case is altogether different from the evidence shown by the record in this case. So the charge of the court in this case is very different from that stated in the other case.

In this case we will state substantially the whole of the testimony. The State proved by Julius Venable, the assaulted party, that he was eleven years old when the case was tried June 6, 1911; that on December 18, 1910, just about dusk he was going to church with his little sister, Mable, twelve years old, and his cousin, Lula Venable, in the village or town of Star; that they were going along the road; he saw the defendant in his one-horse buggy approaching them; he was then driving very fast and whipping his horse. He and the other children went out to the side of the road near the fence; the defendant ran over him and the other two children and cut a gash in his head about an inch and a half long; the doctor had to sew it up and it took about three weeks to heal. There were other bruises over his body, but the cut on his head was the worst he got.

Mable Venable, for the State, testified: She was a sister of Julius

Venable; twelve years old when the case was tried; she and her brother and their cousin, Lula, started to church at Star on December 18, 1910. While in the road to church two buggies came down the road, driving very fast, the horse running; they stepped out of the road to one side and about that time the appellant's buggy ran over them; they were off to the side of the road about five or six feet from the fence when they were run over; they tried to get out of the way but did not have time. On cross-examination she testified: When she first saw the defendant on that occasion he was about fifty feet away; she did not pay much attention to it till he was right at them when they tried to get out of the way and stepped out to the side of the road close to the fence and about that time the buggy ran over them. This occurred about dusk in the town of Star, Mills County, Texas, on December 18, 1910.

Rex Clifton, for the State, testified: On December 18, 1910, he and Brick Eddy started to church about dark on a horse together, riding down the middle of the road; they met two buggies running—one passed on one side and the other on the other side of them; the appellant's buggy was a little in the lead of the other. Appellant alone was in his buggy and two or three people were in the other; he saw the appellant's buggy run over the Venable children and went to them; after the buggy ran over the children it passed on down the road about twenty or thirty steps and struck a post and the driver was thrown out; he then went down to where the buggy was and saw it was appellant. On cross-examination he testified: He did not know who it was in the buggy when the buggy passed them; they were coming fast, the horses were in a long lope; he knew it was appellant's buggy that ran over the children; there was a turn in the lane where the horses ran against the post; when the buggy struck the post appellant was thrown out and he went to and helped him; appellant was then staggering, "and I think he was drunk." He (witness) was about twelve feet away when the buggy ran over the children.

Brick Eddy, for the State, testified: That he and Rex Clifton started to church riding on a horse on Sunday, December 18, 1910; they met two buggies that were going very fast; appellant was in one of them; he was some distance off when the witness first saw him and when he got within forty or fifty feet of the Venable children he was slapping his horse with the lines and the horse was running in a long lope; he had his lines in his hands and when he got close up to the children he saw him drag up his lines so that they were tight; his buggy passed him and Rex to one side and the other buggy to the other side. The other buggy was a little behind appellant's; he saw appellant when he ran over the children; they were to the outside of the road and he (witness) was in the middle of the road about ten or twelve feet away when appellant's buggy ran over Julius Venable. On cross-examination he testified: He thought

appellant was slapping his horse with the lines; he didn't think he was jerking the horse to stop him; he didn't then know for certain that it was appellant in the buggy when he passed him; it was dark and he though it was he; he knew that it was his buggy that ran over the children. The other buggy passed on the other side of them. He went to the post where the buggy was wrecked and saw that it was appellant who was in the buggy; when the buggy hit the post appellant was thrown out on the ground. "He might have been staggering from the effects of the fall."

John Whidden, for the State, testified: "I went with Andrew Perkins from McGirk to Center City on December 18, 1910; he did not have any whisky; I did not see him drink any whisky that day, either at Center City or at Long Branch. He did not drink any whisky at any time that day while I was with him. He was not drunk while I was with him. I got out at Long Branch, between Center City and Star, about half way, and about three or four miles from Star. I got out of the buggy because Perkins would not manage his horse. I know the horse that Andrew Perkins was driving; it was a fiery horse; it did not need to be whipped to make it travel; it would not stand for any whipping. At Star I went to the defendant's horse and buggy by the post where the wreck occurred. I hitched the horse back to the buggy. One of the lines was broken, and some of the other harness was broken. And the buggy was broken. The crossbar to which the singletree is attached was broken, and as well as I remember one of the straps that holds the shafts was broken. When I got the horse and buggy, the horse was broken entirely loose from the buggy, and was standing facing the buggy. The bits were out of the horse's mouth and the bridle was broken." (This was in full the testimony of this witness. Evidently all of the breaking of the harness and the buggy was when it ran into the post and the evidence does not show or tend to show that any of it was broken before then.)

Willis Booker, for the State, testified: That he lived in thirty or forty yards of the place where the children were run over, he carried one of them to his house after they got hurt; the lane makes a slight turn near his house; the horse ran against the post where the road turns; when appellant walked away from the buggy he staggered. "I think he was drunk." The children were seven or eight feet from the fence when run over. The bottom part of the fence was poultry netting, about two and a half or three feet high, and the balance was barb wire.

Will Hawkins, for the State, testified: He saw the defendant at Dr. Brooken's house after the horse had thrown him out at the post; he was drunk; he went to where his horse hit the post; he had then been hitched back to the buggy; he saw the singletree was broken and tied with a rope; he did not see the buggy until after it had been temporarily repaired.

Lester Johnson, for the State, testified: "I know the horse that Andrew Perkins was driving when he ran over the children at Star; it is not a wild horse, but is fiery and will not stand to be whipped; it can be managed all right if you do not whip it, but it will run if it is whipped." The above is all of the testimony that was introduced by the State.

We give in full the testimony of the appellant as follows: "I went from McGirk to Center City on December 18, 1910; we got some alcohol at Center City, four quarts; I drank some of it, don't remember of taking but two drinks. I don't remember anything about running over the children. The first time I found out about the children being hurt was when I was arrested on the road from McGirk to Center City. Langford and Preston told me about the children being hurt. I had no ill will or feeling against the children; never heard of or saw them before. I did not know their parents and had no feeling against them."

In addition to appellant's testimony just quoted, it was admitted that Dr. Brooken, if sworn, would testify: That the defendant came to his house on the night that the children were run over in a very drunken condition; he seemed to be dazed and could talk of nothing except the trouble he had about his horse running into the post and throwing him out. He was in a condition of temporary insanity, but whether due to his drunkenness, or to being addled by his fall, the witness could not state, but knew that defendant was very drunk, and in an irresponsible condition. This is the whole testimony shown by the statement of facts.

The court in the charge first correctly stated the case to the jury. He then copied in his charge to the jury substantially, if not literally, the following articles of the Penal Code: 1008 (new), 587 (old); 1013 (new), 592 (old); 1019 (new), 598 (old), and subdivisions 5, 7 and 8 of 1022 (new), 601 (old), and 1024 (new), 603 (old). He then submitted to the jury the case in this charge which we quote in full:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant did, in the county of Mills and State of Texas, on or about the 18th day of December, 1910, as alleged, committed an aggravated assault and battery upon the person of one Julius Venable, as charged in the information, you will find the defendant guilty and assess his punishment at a fine of not less than twenty-five nor more than one thousand dollars, or by imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment.

"But if you believe from the evidence that the defendant is guilty of an assault, or an assault and battery, but have a reasonable doubt as to whether such assault and battery was an aggravated assault as hereinbefore defined, you will acquit him of aggravated assault and battery, and find him guilty of a simple assault, or simple assault

and battery, and assess his punishment at a fine of not less than five nor more than twenty-five dollars.

"You are further charged that neither intoxication nor temporary insanity of mind, produced by the voluntary recent use of ardent spirits, is any excuse for the commission of crime, and you may consider intoxication or temporary insanity so produced, if such appears to you from the evidence to have been so in the case now before you, in mitigation of the penalty only, should you find defendant guilty as charged. And if you believe from the evidence that defendant was recklessly traveling upon the public highway, without due regard for others, at the time Julius Venable was injured as charged in the information, and that his injury was the result of such reckless traveling, even though defendant were in a drunken condition, you will find him guilty, and so say by your verdict. You are further charged that when an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show the accident or innocent intention. And you are further charged that an assault or assault and battery may be committed, though the person actually injured was not the person intended to be injured."

Then followed this with a charge on the presumption of innocence and reasonable doubt in accordance with the statute, and closed the charge by telling them that they were the exclusive judges of the facts proven, the credibility of the witnesses and the weight to be given to their testimony, but they were bound to receive the law from the court and be governed thereby. The appellant requested three special charges which were refused. The first is: "That the criminal intent is an element of the offense charged in the indictment; hence, if you believe beyond a reasonable doubt that the defendant, Andrew Perkins, did drive his horse and buggy against Julius Venable, still if you believe that the same was an accident and free from criminal intent, you will acquit him and say by your verdict not guilty."

Another was: "In order for the defendant to be guilty of aggravated assault and battery, or any kind of assault and battery, there must have existed in the mind of the defendant at the time a criminal intent to do the injury alleged in the indictment, to the person of Julius Venable."

The other was: "To constitute an assault and battery, the intent to injure the party assailed must be added to the intended act or force."

There is nothing stated in either of these charges by the appellant therein why either of them should have been given. He took a bill of exceptions to the refusal of the court to give each of them, but in neither of the bills does he give any reason why they, or either of them, should have been given. He merely excepts to the refusal of the court to give them. In his motion for a new trial he quotes his several bills to the refusal of the court to give these charges, but in

no way therein states any reason why they, or either of them, should have been given. In other words, he merely requested these charges, excepted to the refusal of the court to give them and complained by his motion for new trial of the court's refusal to give them, without stating in any of these proceedings the necessity or reason for giving them. Therefore, the matter is not so presented to us as to require a review of the claimed error in refusing to give any or either of said charges. Ryan v. State, 142 S. W. Rep., and cases there cited.

Article 45, Penal Code, is: "No act done by accident is an offense, except in certain cases specially provided for, where there has been a degree of carelessness or negligence which the law regards as criminal." Article 51, Penal Code, is: "The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act." Article 52, Penal Code, is: "On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission."

Neither of these charges were drawn so as to meet these statutory provisions. It was necessary to do so in order to require the court to give either of them, even if the question attempted to be raised had been properly raised in this case.

This court in Lawrence v. State, 20 Texas Crim. App., 536, said: "While a court may qualify or modify an instruction which is asked, so as to make it present the law, as the court conceives the law to be, yet the court is not bound to qualify or modify an illegal or erroneous instruction, but may refuse it outright."

And in Sparks v. State, 23 Texas Crim. App., 448, in construing our statute on the subject of giving written requested charges in misdemeanor cases, this court said: "This statute does not make it obligatory upon the court to prepare and give a written charge when requested to do so by the parties, but only requires the court to give or refuse such charges as are asked in writing. If charges are asked in writing the court shall give or refuse them, with or without modification. But if the court refuses such as are asked, it is not required to supplement them by any charges of its own; it may still, if it desires, decline to give any written charge in the case. In misdemeanors, the object and policy of the law seems to be to relieve the court of the burden and necessity of charges, unless the parties deem it necessary that such instructions as they may prepare in writing should be given. The court should not give instructions which it does not believe to be the law, and it is not even required to modify such charges, but may refuse them absolutely."

This court has always adhered to this doctrine in misdemeanor cases. In Hobbs v. State, 7 Texas Crim. App., 118, the court discusses fully and gives the reason for this doctrine in misdemeanor cases. We think this is further emphasized by the amendment of

1907 of article 723 (old), 743 (new), of the Code Criminal Procedure, charging the statute theretofore. The main charge of the court given in this case substantially embraced the proper instructions to the jury and better than any or either of the special charges requested. There was no reversible error in refusing any or all of these charges.

The appellant has a bill of exceptions to the whole of the charge of the court, quoted above, beginning with the paragraph: "You are further charged that neither intoxicating," etc., quoting it in his bill. The only complaint and reason given for objecting to this charge of the court in the bill, or otherwise, is as follows: "Said charge was vague, uncertain, indefinite and multifarious, and did not give the true law of the case and was prejudicial to the defendant in his trial and calculated to and did mislead the minds of the jury as to the true law of the case." It is, and has long been, the settled law of this State, and many times stated in the opinions of this court, that the objections to the charge, even in felony cases, must specifically point out to the lower court by either a bill of exceptions or in the motion for new trial the errors in such charges objected to, and that where this is not done in the lower court this court will not pass upon the question. The objections to this charge in this case are too general and do not point out any specific error therein sufficient to justify us to pass upon the question. However, as this was a misdemeanor case, we see no special objection to said charge that would justify this court to reverse this case.

There is nothing in appellant's bill of exceptions No. 1, claiming that because there was a prosecution against the appellant for aggravated assault committed on Mable Venable, still pending in the County Court of Mills County on the reversal of a previous judgment therein by this court, that the court below should not permit the introduction of any evidence by the State in this case tending to show that he, appellant, committed aggravated assault and battery on Julius Venable. The bill in no way shows that the appellant had been finally tried and either acquitted or convicted in that matter— even if such conviction or acquittal of an aggravated assault on Mable Venable would be any defense in this case. Besides, appellant had no sworn plea of former conviction or acquittal.

The court did not commit any reversible error in refusing to permit appellant's attorney to read and discuss before him the opinion of this court in Perkins v. State, 62 Texas Crim. Rep., 508, 138 S. W. Rep., 133, above referred to. Such matters are always within the discretion of the lower court and in this case no injury is shown.

The appellant's drunkenness, if he was drunk, when he committed the offense, would be no defense. Penal Code, article 41; Evers v. State, 31 Texas Crim. Rep., 319, and other cases cited by Judge White in section 60 of his annotated Penal Code.

The evidence in this case, without doubt and without contradiction,

conclusively shows the guilt of the appellant. The penalty assessed against him by the jury under the circumstances is quite small. In no event can it be considered as too great or excessive, and no complaint whatever was made to it on that account. Even if there had been some defect in the court's charge, or in the refusal of the charges asked, we would not be justified, under the facts of this case and the law, in reversing it.

The judgment will, therefore, be affirmed.

*Affirmed.*