## HATTIE CUNNINGHAM, ALIAS MACKEY, V. THE STATE.

### No. 2994. Decided April 22, 1914.

**1.—Keeping Bawdy House—Definition—Sufficiency of the Evidence.**

Under article 496, Penal Code, a bawdy house is defined as one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation, and where the evidence sustained the conviction, there was no error.

**2.—Same—Requested Charges.**

Where, upon trial of keeping a bawdy house, the appellant only presented one of her requested charges on appeal, but there was no error in refusing any of them, there was no reversible error.

**3.—Same—Evidence—Bill of Exceptions—Other Transactions—Other Testimony.**

Where, upon trial of keeping a bawdy house, testimony was admitted that defendant about the time alleged kept at her place three cases of beer in an ice box, which the parties at said place were drinking, there was no error; besides, there was much other proof of the same character not objected to by the defendant. Following Hickman v. State, 59 Texas Crim. Rep., 88, and other cases. Besides, the bill of exceptions was insufficient. Wagner v. State, 53 Texas Crim. Rep., 306.

**4.—Same—Evidence—Cross-examination—Bill of Exceptions.**

Where the bill of exceptions was wholly insufficient to authorize a review of the question therein contained, and besides, it appeared from the record that the matter was drawn out directly by defendant's cross-examination of the witness, and was favorable to defendant, there was no error.

**5.—Same—Evidence—Declarations of Third Parties.**

While the declaration of the officer may have been inadmissible, yet, in the absence of a showing that it was, in the bill of exceptions, the same can not be reviewed.

**6.—Same—Evidence—Immaterial Facts—Impeachment.**

Where, upon trial of keeping a bawdy house, defendant sought to impeach her own witness which the court did not permit, there was no error; besides, it was not material as to which of the women the two different men were in bed with.

**7.—Same—Requested Charges—Knowledge of Defendant—Notice.**

It is not required by the law, in a prosecution for keeping a bawdy house, to charge the jury that the defendant had knowledge of the character of the women and that she knowingly kept said house for the purpose of prostitution, and there was no error in refusing a special charge to that effect, where it could be presumed from the evidence that such a state of facts existed as would put the party upon notice and inquiry; besides, it was not incumbent on the court to so amend or supplement the requested charge as to make it legal. Following Perkins v. State, 65 Texas Crim. Rep., 311; Stokeley v. State, 37 Texas Crim. Rep., 638, and other cases.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of keeping a bawdy house; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

*El. J. Gibson,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted for keeping a bawdy house, and the punishment prescribed by law assessed against her.

Our statute (art. 500, P. C.) is that any person who shall directly keep a bawdy house in any house, or shall knowingly permit the keeping of a bawdy house in any house owned, leased, occupied or controlled by him, shall be deemed guilty of keeping or knowingly permitting to be kept, as the case may be, a bawdy house, and on conviction shall be punished, etc. A bawdy house is defined (art. 496, P. C.) as one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation.

The uncontradicted evidence shows that appellant was running,—keeping, and had been running and keeping, since some time in November, 1912, the upstairs of a certain house, containing several rooms, which was the second story over a saloon in Dallas; that she resided there herself during all this time and up to August 14, 1913, the date she is charged with this offense; that said upstairs had a back, or rear, and a front entrance. Several police officers testified that they knew the general reputation of appellant and of said house while she kept it, and that her general reputation was that of a prostitute, and that her said house had the reputation of being kept as a house of prostitution. She neither denied that her house had that reputation, nor that she did not know that it had such reputation. Some of the officers also testified that very late on the night of July 1, 1913, they caught Byron Dunlap and Laura Harris in bed together in one of these rooms. The woman was undressed and the man had on his night dress. These officers swore that this Harris woman's general reputation was that of a common prostitute, and that she had formerly been in the old "Reservation"; that on this occasion when they caught these two parties they aroused the appellant and at the time she and a man by the name of Loving were together in another one of the rooms; that when they aroused her and Loving, Loving said to them, "We have got you beat this time." Appellant took it all as a joke; that she and Loving had a pillow on the floor and the officer felt it and it was warm as if somebody had been lying on it. Among other inmates of the house was a Mrs. Young. Some of the witnesses testified that they knew her general reputation for virtue and chastity and it was bad. Also among other inmates of the house was a Mrs. Tulloss. She stated to one of the officers that the house was getting such a bad name she was going to get another place to stay. Another of the women who was found there was Mrs. Riley and she told the officers that her husband would kill her if he found she was there. On another occasion at night the officers found a woman, Flossie Thompson, in one of the rooms with a man and she was partially undressed at

the time, and considerably under the influence of liquor, if not drunk, and that at the time they found a lot of empty beer bottles lying around in the room. It seems this woman's general reputation was that of a common prostitute. On another occasion the officers caught another woman up there who was drinking, cursing and using very vulgar and indecent language. She had stayed there the night before. Appellant was present when they caught this woman there. She claimed she was trying to get the woman to leave and did afterwards get her to leave. At this time the appellant herself rolled and smoked a cigarette in the presence of the officers. She denied this, but two of the officers swore she did. Some of the officers testified that appellant had in one of these rooms a regular little bar,—counter and fixtures; that she had glasses for drinking the beer and whisky and from time to time they saw that she had both beer and whisky there and on one occasion at least, they found that several of these men and women were up there drinking and carousing. Some of the officers who watched the place at night for some time before the date on which the offense is charged, saw men and women,— couples,—late at night going to and from her house, and they also saw men and women late at night alone going to and from appellant's house. These parties thus seen were not claimed to be regular roomers in the house. About three or four o'clock at night on the date on which this offense is alleged to have been committed, the officers raided the house. When they first went up they looked over the transoms in two rooms. In one of the rooms appellant was in bed with one man and in another Mrs. Young in bed with another. The parties were all undressed. After making the investigation and ascertaining the facts, they demanded admittance. As soon as aroused appellant got out of the bed with the man she was with and went into the other room, aroused the man who was in that bed with Mrs. Young, he went in the room and got in the bed with the man she had been in bed with, and she got in bed with Mrs. Young. Then the officers were admitted. The officers arrested and carried all the parties to headquarters.

Appellant has some bills of exception and complaints to the refusal of the court to give some of her special charges. It is unnecessary to discuss all of these matters. In her brief, while she states she does not waive any of them, she presents only some of them which we take to be the material ones and we will discuss only those. The others present no reversible error.

By her fourth bill she complains that the court erred in permitting Mr. Scott, one of the police officers, to testify that in April or May he was at her place and that there were three cases of beer in an ice box there at the time and that the parties at said place were drinking a lot of beer. The bill is wholly insufficient to require the court to review the question, but if we could, this character of testimony in this character of case is clearly admissible. Hickman v. State, 59 Texas Crim. Rep., 88; Wimberly v. State, 53 Texas Crim. Rep., 11; Finn v. State, 60 Texas Crim. Rep., 521; Robbins v. State, 60 Texas Crim. Rep., 523;

Wilson v. State, 61 Texas Crim. Rep., 628; Sullivan v. State, 61 Texas Crim. Rep., 657; Novy v. State, 62 Texas Crim. Rep., 492. It is needless to cite other authorities. Besides there was much other proof of the same character of testimony, not objected to at all by appellant. As said by this court in Wagner v. State, 53 Texas Crim. Rep., 306: "It is well settled in this State that the erroneous admission of testimony is not cause for reversal if the same fact is proven by other testimony not objected to," citing several cases.

In her fifth bill she complains of testimony of said Scott which was directly drawn out by her in cross-examination. The bill is wholly insufficient to authorize us to review the question, but, if we could, the record would show that this witness had testified about seeing said Mrs. Young and another woman going out late at night from appellant's house with other men and that on cross-examination when she was probing him to know how he knew, he explained how he got his information. This, instead of being against appellant, was for her and certainly appellant can not complain, as the court in his qualification shows that the answers were in direct response to appellant's own questions on her cross-examination.

By her ninth bill she complains that the witness, Jim Roddy, was permitted, over her objections, to state that another officer who was with him at the time when they were near appellant's place, remarked there was something crooked there, referring to her place. This remark may have been inadmissible, but the bill does not show it, nor does the bill show any such state of fact that we can intelligently determine, whether it was or was not admissible.

Her eighth bill of exceptions is quite lengthy. From it we understand the appellant introduced, as her witness, police officer McLure and had him testify, in effect, that at the time he and the other officers made the raid on appellant's house and arrested her and the others, as shown above, it was not G. B. Loving whom he saw in bed with her. On cross-examination he said that he saw her in bed at the time with some man but that he had since concluded that it was not Loving, but a Mr. Meyer. The record shows that the matter was threshed out in the testimony of her witness McLure and Mr. Erwin, the other officer who was with him at the time. She sought to impeach her own witness, as the bill shows, but the court would not permit this. The court's action was correct. Even if it had been shown that the said officer first thought it was Loving in bed with appellant at the time and afterwards concluded it was not Loving but Meyer, would make no difference. There is no question but that from the testimony of the two officers, the two men, Loving and Meyer, were caught in bed with the two women, appellant and Mrs. Young. It would make no difference which man was in bed with which woman. The point was whether the men were in bed with the women, or as claimed by them, the women were together in one bed and the men in the other, and all this matter, as stated above, was thoroughly threshed out in the testimony. In no contingency, as we see it, was the court's

action wrong, or injurious to appellant of which she can legally complain.

The only other question is the appellant complains that the court should have given two special charges Nos. 1 and 2, shown by her bills 10 and 11. The first of these charges is:

"In this case you are instructed, at the request of the defendant's counsel, that even if you believe from the evidence, beyond a reasonable doubt, that on two occasions and some time before the filing of the complaint and information Jack Dunlap and Byron Dunlap were at the house alleged to have been kept by the defendant and alleged to be a bawdy house, and that each of said Dunlaps were in a room in said house with a woman, and that said women were prostitutes and had gone to said house for the purposes of engaging in illicit sexual intercourse; yet, if you have a reasonable doubt as to whether or not the defendant knew of the presence of said parties on said occasion, you can not convict the defendant for the acts of said parties.

"The defendant can not be convicted in this case unless you find and believe from the evidence beyond a reasonable doubt that she knowingly permitted prostitutes to resort and reside to the house kept by her for the purpose of plying their vocation, or unless you believe that she kept said house for the purpose of prostitution."

The other of said charges is: "Before you can convict the defendant in this case you must believe and find from the evidence, beyond a reasonable doubt, that the defendant unlawfully and knowingly permitted prostitutes to resort or reside in the house occupied by her for the purpose of plying their vocation, or that she unlawfully and knowingly kept said house for the purpose of prostitution. Even should you believe from the evidence that prostitutes did resort to said house, or reside therein, for the purpose of plying their vocation, yet you can not convict the defendant unless you believe from the evidence, beyond a reasonable doubt, that she had knowledge of the character of said women, having knowledge of the character of said women, knowingly permitted them to ply their vocation at said house."

We think neither of these charges should have been given. The court charged as follows: "If you find and believe from the evidence beyond a reasonable doubt that the defendant in Dallas County, Texas, heretofore on August 14, 1913, or within two years prior to August 19, 1913, did unlawfully keep or was concerned in keeping a certain house then and there situate as a house where prostitutes were permitted to resort or reside for the purpose of plying their vocation or as a house kept for the purpose of prostitution, then you will find the defendant guilty and assess her punishment," etc. He also charged the burden of proof was upon the State; that she was presumed to be innocent until her guilt was established by legal evidence beyond a reasonable doubt and in case they had a reasonable doubt as to her guilt to acquit her. The court also gave one of appellant's special charges to the effect that the jury could

not convict appellant alone upon proof that the house she kept had the reputation of being a house of prostitution, etc.

This court in Lawrence v. State, 20 Texas Crim. App., 536, said: "Whilst a court may qualify or modify an instruction which is asked so as to make it present the law as the court perceives the law to be, yet, the court is not bound to qualify or modify an illegal or erroneous instruction, but may refuse it outright."

Again this court in Sparks v. State, 23 Texas Crim. App., 447, in construing our statutes on the subject of giving written requested charges in misdemeanor cases, said: "This statute does not make it obligatory upon the court to prepare and give a written charge when requested to do so by the parties, but only requires the court to give or refuse such charges as are asked in writing. If charges are asked in writing, the court shall give or refuse them, with or without modification. But, if the court refuses such as are asked, it is not required to supplement them by any charges of its own; it may still, if it desires, decline to give any written charge in the case. In misdemeanors, the object and policy of the law seems to be to relieve the court of the burden and necessity of giving charges, unless the parties deem it necessary that such instructions as they may prepare in writing should be given. Such as are thus prepared may or may not be given. The court should not give instructions which it does not believe to be the law, and it is not even required to modify such charges, but may refuse them absolutely."

In Hobbs v. State, 7 Texas Crim. App., 117, this court discusses fully and gives the reasons for this doctrine and has always adhered to it. For other cases see those collated under secs. 842 and subdivision 6, sec. 813 of White's Ann. C. C. P., and many cases decided since then by this court. Mealer v. State, 66 Texas Crim. Rep., 140, 145 S. W. Rep., 353; Perkins v. State, 65 Texas Crim. Rep., 311, 144 S. W. Rep., 241.

It is not proper, in this or any other case, for the court, either in his own charge, or at the request of an appellant, to single out any certain part of the testimony as was attempted to be done by appellant in the first paragraph of his charge No. 1 above quoted, and charge the jury thereon. Stratton v. State, 44 S. W. Rep., 506; Copeland v. State, 36 Texas Crim. Rep., 576. For other authorities see sec. 810, White's Ann. C. C. P. As it was improper to give this part of his said special charge, clearly the court was under no obligation to strike that out and give the latter paragraph, even if it had been proper to have given the second paragraph alone. But as shown above, the court's charge substantially and fully embraced all of what was requested in this second paragraph.

What we have said about said first requested charge applies equally to the second. In addition, as to this latter, wherein it attempted to require, as a matter of law, that appellant had *knowledge* of the character of the women and that she *knowingly* kept said house for the purpose of prostitution, it required more than the statute requires. It was not necessary, under the law, that she should *know* the character of women who had illicit intercourse and plied their vocation in the house she kept,

nor does the law require that she shall *knowingly* keep a house for the purposes of prostitution. This charge ignores entirely the law that every person is presumed to know what is going on in his own house wherein he resides (Whitcomb v. State, 30 Texas Crim. App., 269; Stokeley v. State, 37 Texas Crim. Rep., 638), and that in prosecutions for this character of offense, it is not incumbent on the State to prove absolute *knowledge* of an accused, but simply to make such proof, that even if knowledge be necessary, it will be presumed from such a state of facts as would put the party upon notice and inquiry which if followed up would result in knowledge. Wells v. State, 22 Texas Crim. App., 18; McGaffey v. State, 4 Texas, 156; Johnson v. State, 32 Texas Crim. Rep., 504; Brown v. State, 48 S. W. Rep., 176; Wade on Notice, sec. 11; 13 Ency. of Ev., 543; Tucker v. Constable, 16 Org., 407-9.

No reversible error is shown and the judgment will be affirmed.

*Affirmed.*

Davidson, Judge, absent at consultation.