DEE ATKINSON v. THE STATE.

No. 1209.   Decided May 24, 1911.

**1.—Aggravated Assault—Charge of Court—Intent to Injure.**

Where, upon trial of aggravated assault, the evidence showed if there was an assault it was by reason of the fact that defendant forced a door open which was thereby pushed against the arm of prosecutrix, and that this was not done intentionally, it was error to instruct the jury that an assault could be committed by an inanimate object, as a stick or knife, etc., and that the injury would be presumed, and to refuse a requested charge that the intent to injure is an essential element of the offense.

**2.—Same—Charge of Court—Intent to Injure—Physical Pain.**

Where, upon trial of aggravated assault, the evidence showed that the defendant pushed open a door which accidently struck the arm of the prosecutrix, causing no physical pain, the court should have submitted a special instruction that if there was no physical pain inflicted the intent to injure would not be presumed.

**3.—Same—Charge of Court—Constraint—Sense of Shame.**

Where, upon trial of aggravated assault, the evidence showed that the defendant followed prosecutrix and another into a house, forcing the door open against the arm of prosecutrix, who was a lady of high standing, and defendant's testimony showed that he thought he was chasing his sisters in a playful way, the court should not have charged on the question of constraint, sense of shame, etc., as the transaction seemed to have been entirely accidental, without any intention on the part of defendant to inflict pain or injury, and a charge requested on this phase of the case should have been submitted.

Appeal from the County Court of Hamilton.   Tried below before the Hon. R. Q. Murphree.

Appeal from a conviction of simple assault; penalty, a fine of $10. The opinion states the case.

*S. R. Allen,* for appellant.—Cited Ware v. State, 24 Texas Crim. App., 521; Flournoy v. State, 25 Texas Crim. App., 244.

On question of refusing defendant's special instructions:   Giddings v. State, 83 S. W. Rep., 694; Stermer v. State, 46 Texas Crim. Rep., 183, 78 S. W. Rep., 1072; Patrick v. State, 45 Texas Crim. Rep., 587, 78 S. W. Rep., 947; Gilbert v. State, 24 S. W. Rep., 648; Irvine v. State, 20 Texas Crim. App., 12; Wimberly v. State, 22 Texas Crim. App., 506; Menach v. State, 97 S. W. Rep., 503; Ware v. State, 24 Texas Crim. App., 521; Souther v. State, 18 Texas Crim. App., 352.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of simple assault under an information charging him with aggravated assault.

· The assault is alleged to have been committed upon Miss Elma Warren. The prosecutrix and another lady passed along the street at night near where appellant was standing, and were accosted by him. The ladies had been to a moving picture show and were en route home; when near the northwest corner of the square someone said wait a minute. Prosecutrix turned her head slightly; the party came close to her, and she recognized appellant. He remarked when he got right close to them, "O, I beg pardon; excuse me," or something like that. She replied to him, "You are not excusable," and continued her journey. After he had used the expression, "O, I beg pardon; excuse me," he turned around as if to go away. The ladies pursued their journey, and just as they reached the bridge and had proceeded quite a way across it she looked and saw appellant coming in their direction, and he seemed to be walking rapidly. The ladies ran into the residence and shut the door. Just as they did this appellant came on the gallery and knocked against the door. The witness opened it slightly and asked, who is it? Appellant said nothing intelligible, but murmured or muttered something. Witness shut the door. Appellant then threw his weight against it and the door came open. The door in opening struck the lady on the arm. Appellant immediately went away. The other lady, Mrs. Warren, testified that as they passed appellant he said, "Wait a minute, kids." She looked around and saw appellant near the sidewalk, the ladies being in the middle of the street; that appellant approached them until rather in front of them and said, "Excuse me, I beg your pardon." Her testimony is practically the same as the former witness with reference to them rapidly approaching their home and entering it; and also with reference to appellant coming to the door and opening it by throwing his weight against it or kicking it and forcing it open. She was not positive it was appellant, but she said she thought it was he. She said that she did not understand what he said, but murmured something like a drunk man. She also said there was considerable travel along the street in front of their home.

Appellant testified that on the night in question he saw two girls passing up the street and thought they were his sisters, whom he had left at his father's home, and was going up the street to his married sister's residence. When he observed them they were traveling along the square with their backs to him. "I said, 'Hold on there; where are you kids going?' They did not stop, but checked up some and looked over their shoulder. I walked up a little closer and decided that it was not my sisters and turned back to the drug store. I heard one say something to the other, and the voice was like that of my sister Alice. They also commenced going faster as if they wanted to get away from me, and I concluded again that maybe it was my sisters. I thought that they were trying to get away from me, as I told them not to come on the street that night, as the streets would be crowded with a rough crowd. They come to town sometimes when

girls ought not to be out alone, and I try to keep them from it. I am the only brother at home and my father is deaf." He says he thought they were trying to play a Christmas trick on him and get away from him, and he took after them, intending to make them return home. They ran across the bridge and into the residence of Mr. Warren. He ran after them as quick as he could and pushed upon the door with his shoulders and foot and forced it open. That after the door came open he saw that he was mistaken and said, "Excuse me, I am mistaken in the parties." The ladies began screaming and he went away. That the ladies he saw on the street were about the same size of his sisters, and the voice of one of them sounded like that of one of his sisters. He said he had no idea of hurting Elma Warren that night; did not know she was on the opposite side of the door when he pushed it in; that he did not put his hands on her. On cross-examination he testified when he remarked to the ladies, "Hold on, where are you kids going?" he went closer to them, and concluding that it was not his sisters, said to the ladies, "O, I beg pardon." That he again concluded it was his sisters when they began to run. He also stated when he went on the porch he still thought that it was his sisters trying to play a Christmas trick on him. Miss Warren, the alleged assaulted party, also testified that he did not lay his hand upon her, nor touch her, and that she was standing on the inside and that the door was pushed back against her when thrown open by appellant; that this did not cause her any pain, and that there was no insult offered her, but that she was frightened, or, as she says, scared of the appellant. This is a brief summary of the facts.

Appellant was convicted of simple assault and fined $10. After giving the ordinary and usual stereotyped definitions the jury was informed by the charge that if they believed he was guilty of an assault but had a reasonable doubt whether it was a simple or aggravated assault they would acquit of the aggravated assault and convict of the simple assault. He further charged the jury that an assault or an assault and battery may be committed by the use of any part of the body of the person committing the offense, as of the hand, foot, head or by the use of any inanimate object, as a stick, knife, or anything else capable of inflicting the slightest injury or by the use of any animate object as by throwing one person against another or driving a horse or other animal against the person.

Appellant raises various objections to the court's charge, and the refusal to give the special instructions. If there was an assault under the facts it was by reason of the fact that appellant forced the door open, which was thereby pushed against the arm of Miss Warren. That he did not know she was behind the door, we think, is fairly concluded, if not evident, from the facts. She had shut the door when he broke it open, but it is evident that he did not use the door intentionally to strike her, and it may be fairly concluded that he broke the door open as a means of entering the house. The fact that

the door was forced against Miss Warren was incidental and acci-
dental. There is no evidence that appellant used any stick or knife
or any inanimate substance of any sort except as stated. He testified
that he did not intend to injure the ladies; that he thought they were
his sisters he was pursuing, and the testimony of the ladies show that
the fact that the door struck one of them on the arm when he broke
it open was an accident, or at least incidental to the fact that he
broke the door open.

The court charged the jury that the intent to injure would be pre-
sumed. Appellant requested an instruction to the effect that to con-
stitute the offense of aggravated assault the intention of the defend-
ant to do some unlawful violence, or do some injury to the person,
is an essential element of the offense, and if they find and believe from
the evidence that all the violence used by the defendant on said occa-
sion was for the purpose of entering the house, and that appellant
was not entering said house for any unlawful purpose, and that in so
doing, if he did, he used no more force than was necessary to do so,
and without any intention to hurt or do any violence to Miss Warren,
they should acquit. We are of opinion that this charge should have
been given.

Appellant also asked a charge substantially that if defendant caused
the door to come in contact with the person of Elma Warren, unless
they should find from the evidence that the same caused physical
pain, the intent to injure would not be presumed, and the burden
of proving the intent to injure would be upon the State; and if they
should find that Elma Warren was not caused physical pain, they
should acquit him, unless the State should show beyond reasonable
doubt that appellant intended and endeavored by his acts to inflict
upon Miss Warren such physical pain. We are of opinion this charge
should have been given.

Another charge was asked to the effect that no amount of constraint,
sense of shame, or other disagreeable emotion of the mind, caused by
words alone, will authorize a conviction under the facts of this case
for aggravated assault. Inasmuch as Miss Warren is a lady, and
the assault was charged to have been committed upon a lady, the jury
may have concluded because of the fact that he chased the ladies into
their home and pushed the door open, that he would be guilty of the
assault without reference to the fact that the door had been pushed
against her, inasmuch as she had testified defendant caused her no
physical pain, and they may have convicted under the impression that
inasmuch as she was a lady and was chased by appellant, that, there-
fore, he would be guilty of an aggravated assault. If appellant was
guilty of an assault at all upon Miss Warren, it was by reason of
the fact that he pushed the door against her. This is shown to have
been accidental, we think, beyond controversy, and as accidental injury
without any intention to inflict pain or injury will not be considered
an assault under our law.

Another charge was asked submitting the issue of accident and mistake. We are of opinion under the peculiar facts of this case, this phase of the law should have been called to the attention of the jury. The conduct of appellant in the absence of his own testimony, that he thought the ladies were his sisters, was of that character that would not appeal to the manhood of a jury; in fact, it would have a tendency to discredit the witness. In the light of his evidence before the jury, if they should believe that under proper instructions they probably would have acquitted, and, in fact, if he told the truth about it, we are inclined to the opinion that he should have been acquitted. In support of these propositions we cite Flournoy v. State, 25 Texas Crim. App., 224; Ware v. State, 24 Texas Crim. App., 521; Stermer v. State, 46 Texas Crim., 183, 78 S. W. Rep., 1072.

We are therefore of opinion that the judgment for the reasons indicated should be reversed and the cause remanded, and it is accordingly so ordered.

*Reversed and remanded.*