### JESUS LOZANO v. THE STATE.

#### No. 4731. Decided March 27, 1918.

**1.—Murder—Evidence—Acts of Third Parties.**

Upon trial of murder it was error to admit testimony with reference to the movements and actions of deceased and his companions prior to their reaching the scene of a prior difficulty, which had no immediate connection with the homicide, and could not affect the defendant.

**2.—Same—Evidence—Prior Difficulty—Details—Charge of Court—Motive.**

Upon trial of murder it was reversible error to admit in evidence the details of a fight occurring between other parties with which defendant was not connected, except that there was some reference made to the fight before the homicide, and while enough of the fight was admissible to explain this reference the details thereof should not have been admitted in evidence. This was especially so in connection with the court's charge limiting this testimony to motive for the killing on part of the defendant.

**3.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of murder, testimony was admitted for the purpose of impeaching defendant's witness, the court's charge which practically instructed

the jury that it did so impeach said witness was upon the weight of the evidence.

**4.—Same—Evidence—Weapon Used—Charge of Court.**

Where, upon trial of murder, the evidence showed that defendant had been attacked by deceased and his three companions and had been knocked down by rocks, his left hand broken and his right hand cut, the court should have submitted a charge that if the weapon used in the assault upon defendant was such as to produce a reasonable apprehension of death or serious bodily injury, they should regard such an attack as being made for that purpose, under article 1106, P. C.

**5.—Same—Intent to Kill—Charge of Court—Aggravated Assault—Deadly Weapon.**

Where, upon trial of murder, the evidence raised the issue of aggravated assault, showing that the deceased and his companions made a vigorous assault upon defendant inflicting pain, etc., and that an intent to kill on part of the defendant was absent, the court should have submitted a requested charge on this phase of the case on the question of adequate cause and aggravated assault, especially where the instrument used by the defendant was a pocketknife which was not per se a deadly weapon.

**6.—Same—Evidence—Defendant as a Witness—Intent to Kill.**

Where, upon trial of murder, the defendant claimed that he did not intend to kill, but acted in self-defense, etc., the court should have permitted him to testify to these facts in his own behalf.

**7.—Same—Evidence—Contradicting Witness—Arrest—Confessions.**

In order to use statements of a party under arrest, even for impeachment purposes, he must be warned according to the statute, and that statement must be in writing in conformity thereto, and where this was not the case, it was error to admit the same in evidence.

**8.—Same—Practice on Appeal.**

Matters which will not occur on another trial, such as the argument of counsel, application for continuance, etc., need not be considered on appeal.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*W. L. Schlesinger* and *Chambers & Watson,* for appellant.—On question of evidence of previous difficulty in which defendant had no part: Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138; Clark v. State, 59 Texas Crim. Rep., 246, 128 S. W. Rep., 131; Curtis v. State, 52 Texas Crim. Rep., 606, 108 S. W. Rep., 380; Pace v. State, 58 Texas Crim. Rep., 90, 124 S. W. Rep., 949; Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; Gardner v. State, 55 Texas Crim. Rep., 400, 117 S. W. Rep., 148; Counts v. State, 89 S. W. Rep., 972; Gray v. State, 47 Texas Crim. Rep., 375; Walker v. State, 140 S. W. Rep., 455.

On question of intent by testimony of defendant: Berry v. State, 30 Texas Crim. App., 423; Kinnard v. State, 35 Texas Crim. Rep., 276;

Pratt v. State, 96 S. W. Rep., 8; Money v. State, 97 id., 90.

On question of other offenses for impeachment purposes: Stull v. State, 84 S. W. Rep., 1059; Casey v. State, 97 id., 496; Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W. Rep., 299; Franklin v. State, 53 Texas Crim. Rep., 547, 110 S. W. Rep., 64; Harris v. State, 110 S. W. Rep., 839; Maples v. State, 56 Texas Crim. Rep., 99, 119 S. W. Rep., 105.

On question of written confession to impeach witness: Prata v. State, 76 Texas Crim. Rep., 60, 172 S. W. Rep., 974; Murff v. State, 76 Texas Crim. Rep., 5, 172 S. W. Rep., 238; Morales v. State, 36 S. W. Rep., 846; McDonald v. State, 72 id., 383; Long v. State, 10 Texas Crim. App., 186; Wyres v. State, 166 S. W. Rep., 1150.

On question of court's charge on weight of evidence: Benson v. State, 54 Texas Crim. Rep., 11, 111 S. W. Rep., 403; McCleary v. State, 57 Texas Crim. Rep., 139, 122 S. W. Rep., 26; Coffman v. State, 62 Texas Crim. Rep., 88, 136 S. W. Rep., 779; Carden v. State, 62 Texas Crim. Rep., 545, 138 S. W. Rep., 598; Gradington v. State, 155 S. W. Rep., 210.

On question of details of other offense: Stewart v. State, 69 Texas Crim. Rep., 337, 153 S. W. Rep., 1150; Pannell v. State, 54 Texas Crim. Rep., 498, 113 S. W. Rep., 536; Bogus v. State, 55 Texas Crim. Rep. 126, 114 S. W. Rep., 823.

On question of court's charge limiting evidence admitted to affect credibility of witness: Taylor v. State, 50 Texas Crim. Rep., 56, 100 S. W. Rep., 393; Stull v. State, 84 S. W. Rep., 1059; Benson v. State, 54 Texas Crim. Rep., 11, 111 S. W. Rep., 403.

On question of court's failure to charge on aggravated assault: Beaupre v. State, 70 Texas Crim. Rep., 19, 156 S. W. Rep., 625; Jones v. State, 69 Texas Crim. Rep. 216, 153 S. W. Rep., 310; Hysaw v. State, 155 S. W. Rep., 941; McDowell v. State, 68 Texas Crim. Rep., 577, 151 S. W. Rep., 1049; Hightower v. State, 56 Texas Crim. Rep., 248, 119 S. W. Rep., 691; Trevino v. State, 72 Texas Crim. Rep., 91, 161 S. W. Rep., 108; Huddleston v. State, 70 Texas Crim. Rep., 260, 156 S. W. Rep., 1168; Reeves v. State, 74 Texas Crim. Rep., 503, 168 S. W. Rep., 860; House v. State, 75 Texas Crim. Rep., 338, 171 S. W. Rep., 206.

On question of deadly weapon used by deceased: Polk v. State, 60 Texas Crim. Rep., 499, 132 S. W. Rep., 767; Ivory v. State, 48 Texas Crim. Rep., 279; Best v. State, 61 Texas Crim. Rep., 551, 135 S. W. Rep., 581; Edwards v. State, 68 Texas Crim. Rep., 197, 151 S. W. Rep., 294; Holmes v. State, 155 S. W. Rep., 205.

On question of specific intent to kill: House v. State, 75 Texas Crim. Rep., 338, 171 S. W. Rep., 206; McDowell v. State, 68 Texas Crim. Rep., 577, 151 S. W. Rep., 1049.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of deadly weapon: Briggs v. State, 6 Texas Crim. App., 144; Ashton v. State, 31 Texas Crim. Rep., 479; Thomas v. State, 44 id., 344; Boykin v. State, 59 id., 267.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at fifteen years confinement in the penitentiary.

The record is voluminous. Many of the bills of exception will· be treated in a general way. The State's theory of the case was that four parties, Nacke, deceased; Guerra, Gonzales and Damm, were wandering around at night in the City of San Antonio, going from street to street, seeking certain parties, especially a woman. In their meanderings they came to Matamoras Street, where they discovered a fight in progress in a house supposed to be one of prostitution. Nacke did not testify because he was the deceased. The other three parties testified, in substance, the same with reference to their wanderings about the streets, and their arrival at the house of the difficulty. This was between a woman and two men. These parties were strangers to defendant and the witness Pena, who figures in the case as a defense witness. Immediately after this difficulty Pena and appellant went away, as did the other four parties. Shortly after leaving the place of this difficulty the deceased and his companions traveled on one side of the street and Pena and appellant on the other side. The testimony is not clear as to which of the parties crossed the street, but they met in the street and a difficulty occurred. All parties, State's witnesses and deceased, were strangers to Pena and appellant. As to just how the ·difficulty began there is doubt. The State's contention was that appellant, or Pena, began the difficulty. The appellant's contention was that the difficulty was brought on by Nacke and his companions. Nacke charged Pena with being engaged in the difficulty between the woman and the two men at the house, and denounced him. This was denied by Pena. One word brought on another until it ended in a fight in which all six engaged. The State's theory is that appellant stabbed Nacke with his knife before Nacke and his crowd struck any blows. Appellant's theory was that Nacke and his companions turned upon and assaulted him, knocked him down and struck him with rocks, ·and cut him with a knife. His left hand was broken, and his right hand cut or stabbed. The testimony shows that rocks were thrown, and appellant knocked down. The testimony indicates that the meeting may have been accidental. Appellant's testimony is to the effect that after he was knocked down and was being beaten, and after being knocked down once or twice, he got his knife from his pocket, opened it while the other parties were making assaults upon him, and used it to defend himself, but with no purpose or intent to kill.

Several bills of exception were reserved to the testimony with reference to the movements and actions of deceased and his companions prior to their reaching the scene of the fight between the woman and the two men on Matamoras Street. These bills detail the testimony of the witnesses for the State with reference to their movements going from street to street seeking various parties. We are of opinion this evidence was not admissible. Their movements would not affect the appellant.

There are bills of exception reserved to the introduction of evidence

Vol. 83 Crim.-12

with reference to the fight between the woman and the two men on Matamoras Street. As we understand the record, appellant was not connected with that fight. The State advanced the theory that Pena had something to do with it. This fight was gone into in prolix detail, showing that the woman and one of the men were Mexicans, and the man they were fighting was a white man about nineteen or twenty years of age, and that the Mexicans were fighting him; that the officers came and arrested the woman and the white man and took them away. We are of opinion that the details of that matter were not admissible. If appellant was present he was but an onlooker and took no part in the fight. If any of this testimony was admissible with reference to the fight, it was by reason of the fact that Nacke accused Pena of participating in the fight. This accusation initiated the fatal trouble. Enough of that fight was admissible to explain Nacke's accusation against Pena. Upon another trial the details of that trouble will not be permitted to go to the jury, and only so much of it as will serve to connect that matter with the later difficulty.

In this connection the court limited that testimony to motive for the killing on the part of appellant. We are of opinion this was error. There is nothing in the testimony, so far as we have been able to discover, that would induce the belief that the trouble between the men and the woman served any purpose to show motive on the part of appellant in killing Nacke. There were no facts occurring at the time of either fight that would indicate that appellant had any reason to have animosity toward Nacke on account of the first fight.

The court charged the jury with reference to the testimony of Pena. Pena had been indicted and acquitted for killing Nacke. He testified as a defense witness. The court charged the jury in regard to this, as follows:

"The State was also permitted by the court to elicit from the witness Andres Pena that he had been indicted, tried and acquitted for the killing of Carlos Nacke. I charge you that same was admitted by the court for the sole purpose of affecting the credibility of the witness Andres Pena testifying in this case, and you shall consider it for no other purpose."

This character of evidence is admissible for impeaching purposes, but the jury should not be told that it does impeach. Such charge is upon the weight of the evidence. The charge should have been so given as to not suggest to the jury that it did affect his credibility. The jury should be left free to consider it for impeaching purposes, or as affecting his credibility. They might consider it for that purpose. The jury are the judges of the weight of the testimony and the credibility of the witnesses.

The court failed to give a charge to the effect that if the weapon used in the assault upon appellant was such as to produce a reasonable apprehension of death or serious bodily injury, they should regard such attack as being for the purpose of killing appellant or inflicting upon him such serious bodily injury. Art. 1106, P. C. This was called for by the testimony. Appellant had been attacked by the deceased and his

three companions; had been knocked down once or twice with rocks; his left hand broken and his right hand cut. Appellant was entitled to this charge under the terms of article 1106, *supra*. The court did not so instruct the jury, and refused a charge specifically submitting this issue.

Appellant also requested the following charge: "At the request of the defendant, I instruct you as a part of the law in this case, that our statute provides, 'where a homicide occurs under the influence of sudden passion but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of homicide unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery.'

"So in this case I, therefore, charge you that should you believe from the evidence that the defendant, Jesus Lozano, killed deceased, Carlos Nacke, by striking or stabbing the said Carlos Nacke with a knife, but you further believe from the evidence or have a reasonable doubt thereof, that the defendant, Jesus Lozano, was then laboring under the influence of sudden passion when he so killed deceased, if he did, and by the use of means not in their nature calculated to produce death and without any intent to kill, did then and there cut or stab Carlos Nacke with a knife and did thereby inflict serious bodily injury upon the said Carlos Nacke, and not in self-defense as herein charged, you will find him guilty of an aggravated assault, and assess his punishment at a fine of not less than $25 nor more than $1000, or imprisonment in the county jail for not less than one month nor more than two years, or both such fine and imprisonment."

This charge was in response to the testimony. The issue of aggravated assault was clearly raised by the testimony. These parties, from the appellant's standpoint, had made vigorous assaults upon him with rocks and their fists, and had cut one hand and broken the other. Under such circumstances detailed the statute clearly authorized and required this charge, for if appellant fought under the circumstances not for the purpose of killing but for the purpose of resisting the assault, he would not be guilty of punishable homicide. The issue of aggravated assault was an issue. The statute under which this charge was asked is to the effect that, the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless, from the manner in which it was used, such intention evidently appears. Another statute directly applicable to this charge reads as follows:

"Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

It was under this particular statute that the charge was requested.

There is no question of the fact that the fight was exciting and rapid. There is no description of the weapon used by appellant as to its size, length or deadly character. It may be inferred correctly that it was a pocketknife. Under such circumstances if appellant was not acting in self-defense, he was entitled to a charge submitting the issue of aggravated assault. The difficulty occurred at night; the parties were attacking appellant, as already stated, when he used his knife. The testimony also indicates that he did not purpose to kill but fought to free himself from his enemies. A special charge submitting this question was also requested and refused. The special instruction, after submitting the statute, included this clause: "So in this case, if you believe from the evidence that the defendant killed the deceased and not in self-defense, and you further believe that the means used were not in their nature calculated to produce death, then you will find defendant not guilty of homicide, unless you believe there was an intention on the part of defendant to kill, and he was not acting in self-defense; but you could under the law find the defendant guilty of aggravated assault and battery, unless defendant acted in self-defense, and in such case defendant could not be convicted of any offense." This excerpt is taken from the refused charge. The charge should have been given.

Appellant offered to prove by himself while on the witness stand the intent which actuated him during the difficulty, in substance, that he did not intend to kill but only used the knife as a means of defense and for the purpose of freeing himself from the attack of his four assailants. The court refused to permit this testimony. This was error. A defendant testifying in his own behalf has a right to state his intent. The authorities sustain this proposition.

There was a witness named Saucedo used by the defendant. The State offered a confession made by Saucedo, or what purported to be a confession, supposedly to contradict or in some way impair the weight and standing of Saucedo before the jury. This confession or statement was in writing, purporting to have been made to Coy, chief of police. This appeared in the face of the written document. The confession was not made to Coy. He was not present at the time; that it was made to other parties. The fact that Coy's name appeared in the written confession as the party to whom it was made is accounted for by testimony to the effect that the police department had written confessions in blank printed by the wholesale and Coy's name appeared in all of these. The theory of the State was that in taking the confession they forgot to scratch out Coy's name and insert the name of the party to whom it was made. This did not legally authorize the introduction of this testimony for any purpose. In order to use statements of a party under arrest, even for impeachment purposes, he must be warned according to the statute, and since the change in the law, it must be in writing in conformity to the terms of the statute, otherwise it is not admissible. Appellant's objection to this testimony should have been sustained.

There are other questions of kindred import to those discussed. These will not occur upon another trial in view of what has been said as to those discussed. The argument of the prosecuting counsel should not

occur upon another trial, and the application for a continuance may be met by the presence of the witnesses; if not, it will come in a different relation from what it now occupies.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, not sitting.