LUDWIG IRLBECK v. THE STATE.

No. 14057. Delivered June 10, 1931.

6

[redacted]

The opinion states the case.

*Dennis Zimmerman,* of Tulia, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Offense, aggravated assault; punishment, a fine of $250 and thirty days in jail.

Mrs. C. H. Onthank, the person upon whom the assault was alleged to have been committed, testified substantially as follows: That she lived on a farm of 160 acres southwest of Happy, Texas, in Swisher county; that they had just finished milking two cows and one of the children said, "Yonder comes Mr. Irlbeck"; that she looked and saw the car coming in at the gate with Ludwig Irlbeck, John Irlbeck and Gerhard Ackfeld in it; that the car was being driven by appellant; that she left the cow lot and went to where they had stopped the car; that as she approached them she said, "Good Morning, Mr. Irlbeck"; that he said "What kind of business is this, you running a man off the place with a rifle. Don't you know a rifle will kill a man?" She testified further that she told him it was not a rifle, but a shotgun, and that she would do the same to him if he did not get off of her place. She said she informed the appellant that she had a lease contract on the premises until the 15th day of September, 1929, and he said that didn't matter, that he had a lease contract for the next year and he was going to farm that land; that she told him he could not get the land until the 15th day of September; that she told him this before he went into the field to plow the land and he said he was going to go to plowing as he had a lease too, and that she told him that he couldn't do it, but he said he was going to do it anyway. She

further testified that about that time Gerhard Ackfeld came up close to her with both fists doubled up and shaking them at her said, "We come for the rifle, we come for the rifle, we come for the rifle"; that all the time appellant kept getting closer to her; that she said, "You are not going to get my gun," and started to her car, where her gun was; that the appellant saw the gun in the car and started for the car also; that they reached the car about the same time and grabbed the gun about the same time; that appellant got hold of the gun by the barrel and she by the guard; that during the struggle that followed Gerhard Ackfeld got hold of her arm with one hand and grabbed her by the throat with the other and choked her and mashed her down on the ground and put his knee on her chest while appellant held on to the gun; that with his knee on her chest and choking her, Ackfeld made her release the gun and then they went to the car and got in it and left, taking the gun with them. She further testified that while the appellant held to the gun with one hand, he hit her with the other, striking her shoulder and knocking her back about two feet; that her shoulder was bruised and had a blue place on it from said lick. She testified on cross-examination that she would have shot them with the gun if they did not leave her place.

She was corroborated by her son, Donald Onthank, a boy about ten years of age.

The state also proved by Dr. Webb that about a week or ten days after the difficulty, Mrs. Onthank came to his office and complained about her side; that he examined her and found that her left side about her lower ribs had been bandaged by adhesive tape and that the bandages had slipped out of place; that she had a sore place on her ribs and he could not tell whether it had been fractured or not; that he did not x-ray it; that in his opinion it could have been a green stick fracture and could have been caused by a man's knees. Dr. James W. Stevens testified for the state to substantially the same effect.

Dr. Crawford testified for the appellant that about the 16th day of July, the sheriff brought Mrs. Onthank to his office and that he found she had an injury on her lower ribs; that he measured it and it was seven inches long and not more than one inch wide at any place; that it was not black and blue; that it was more of a red welt across her body; that he did not x-ray it and could not tell whether or not it had or had not been fractured; that it did not look like a place that would be made by a man putting both his knees together there; that it could have been caused by the butt end of a shotgun by jerking it back against or skidding it across her ribs; that it looked to him like it was made by the barrel of a gun striking her; that it was possible that the marks on her body could have been caused by a man's knees on her body if the sharp part of the knee had skidded across the same.

The appellant testified substantially as follows: That on the morn-

ing of the difficulty testified to by Mrs. Onthank, he went up to the house in his car, accompanied by his son, John Irlbeck, and Gerhard Ackfeld; that when they stopped the car and got out, Mrs. Onthank came to meet them and he asked her, "What kind of business is this, you running a man off a place he's got leased, with a rifle? Don't you know that a rifle will kill a man;" that she said it wasn't a rifle, but a shotgun; that about that time he looked around and saw the gun in her car and that she made a start for the gun and he went for it, too; that she got hold of it first by the butt or trigger end and he caught it by the barrel with both hands; that during the scuffle that ensued, he did not touch her in any way but kept hold of the gun to keep it from shooting him. He testified that Ackfeld did not catch hold of her in any way except to catch hold of her arms to get her to turn loose of the gun; that they did not throw her down or knock her down and he did not catch her by the throat or get on her with his knees; that as soon as she turned the gun loose, they quit and brought the gun to town and turned it over to the sheriff.

He was corroborated in his testimony by the witness Gerhard Ackfeld and his son, John Irlbeck.

Appellant complains of the action of the court in refusing to allow the witness, Ackfeld, while testifying through an interpreter to answer the following question: "Ask him what his intentions were that morning as to whether he intended to hurt Mrs. Onthank or not," and also the refusal of the court to let him answer a question, while testifying in his own behalf, the question being as follows: "State what your intentions were that morning as to whether you intended to hurt Mrs. Onthank or not." Said bill shows that the county attorney objected to said questions because they were leading and that the court sustained the county attorney's objections to said questions and refused to permit the answers of said Ackfeld and of the appellant. The bill further shows that if they had been allowed to answer the question, they would have answered that they had no intention to hurt the said Mrs. Onthank.

We do not think that the objection to the questions asked should have been sustained. The appellant and Ackfeld both testified that Mrs. Onthank made the first move to get the gun; that she started for the car and they thought she intended to shoot them with it and that they merely caught hold of her and of the gun to disarm her. They both testified that they never struck her or pushed her and that no one got on her with their knees and no one choked her and that as soon as she turned the gun loose, the struggle ceased. Mrs. Onthank herself testified that she would have shot them with the gun if they had not left her place. We quote from Lozano v. State, 83 Texas Crim. Rep., 174, 202 S. W., 510, 512:

"Appellant offered to prove by himself while on the stand the intent

which actuated him during the difficulty, in substance, that he did not intend to kill, but only used the knife as a means of defense and for the purpose of freeing himself from the attack of his four assailants. The court refused to permit this testimony. This was error. A defendant testifying in his own behalf, has a right to state his intent. The authorities sustain this proposition."

By a number of bills of exception appellant complains of the court's refusal to give special instructions on the question of intent of the appellant. The court in his main charge had over the objection of the appellant charged the jury: "When an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show the innocent intention." Appellant objected to same because it assumed that defendant intended to inflict the injury on the prosecuting witness, whereas it was a disputed fact as to whether the injury was accidental or self-inflicted or whether she was injured at all, as claimed. The court in his charge in no way submitted the defendant's defense. The appellant, his son and Gerhard Ackfeld all positively testified that they did not in any way choke, strike or throw the prosecuting witness down or get on her, but merely caught hold of her and the gun to make her turn loose of the gun so that she could not shoot them with it, and that they did so because of the fact that they were afraid she would shoot them and that as soon as she turned the gun loose, they turned loose of her. Such special instructions while differently worded were in effect a request to instruct the jury that if they should find and believe from the evidence that the appellant did not assault Mrs. Onthank, as alleged, and did nothing more than to disarm her of a shotgun with no intention to injure her, that they would acquit him and say by their verdict not guilty.

In the case of Yarbrough v. State, 66 Texas Crim. Rep., 311, 147 S. W., 272, this court in part held that "where all the evidence shows that one charged with a specific offense is guilty of wrongful conduct, and perhaps some offense against the law, and the defendant asks a special charge in regard to the offense for which he is then being tried, presenting affirmatively his defense to that offense, it should be given." If the intent to injure is a vital issue in the case, it is error to refuse to give instructions affirmatively submitting the defensive theory. Branch's P. C., sec. 1534; Floyd v. State, 29 Texas Crim. Rep., 345, 15 S. W., 819; Atkinson v. State, 62 Texas Crim. Rep., 419, 138 S. W., 125; Perkins v. State, 62 Texas Crim. Rep., 508, 138 S. W., 133; Calliham v. State, 67 Texas Crim. Rep., 658, 150 S. W., 617; Warner v. State, 74 Texas Crim. Rep., 209, 167 S. W., 1109.

The complaint and information in this case charged that the appellant committed said assault by then and there pushing with great force and did by using said force and violence cause the said Mrs. C. H.

Onthank to fall to the ground and did cause her to be bruised and wounded. In his charge to the jury the court instructed them as follows: "An assault or battery becomes aggravated when committed by an adult male upon the person of a female, and may be committed by acting together with another. Now if you believe from the evidence beyond a reasonable doubt that the defendant Ludwig Irlbeck did commit the offense of aggravated assault as charged, then you will find him guilty and assess his punishment," etc. The court also instructed the jury that the injury intended may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind. The exception was directed to that part of the court's charge which instructed the jury that the injury intended may be constraint, a sense of shame or other disagreeable emotion of the mind, because it submitted an issue not made by the information or the evidence, there being no testimony and the prosecuting witness not claiming any constraint, sense of shame or other disagreeable emotion of mind, but merely that she received personal injury from the appellant.

In our opinion the giving of this charge was erroneous. A charge of the court to the jury should only submit the question of guilt predicated upon an assault committed in the manner and by the use of the means set out in the indictment or information. We are constrained to believe that the giving of the charge above referred to was manifestly erroneous and may have been of material injury to the cause of appellant. See Maloney et al. v. State, 57 Texas Crim. Rep., 435, 125 S. W., 36; Martin v. State (Texas Crim. App.), 28 S. W. (2d) 140.

There are a number of exceptions to the argument of the county attorney. In view of the evidence as a whole, we cannot say that said arguments were entirely justified, but we deem it unnecessary to discuss them in view of our conclusion in this case.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.