WARREN SMITH V. THE STATE.

No. 21031. Delivered May 22, 1940.

The opinion states the case.

*Mary West,* of Crystal City, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted in the county court of an aggravated assault upon Quanah Parker Allen, and fined the sum of $150.00, and from a judgment thereon this appeal is predicated.

The facts are voluminous and show that at a spinach festival and rodeo at Crystal City, with a large crowd present, the complaining witness was present and seemed to be under the in-

fluence of intoxicating liquor. He was doubtless creating some kind of disturbance, and at the request of the person in charge of the rodeo there was an attempt made to quiet or remove Mr. Allen from the rodeo grounds. This attempt finally resulted in an encounter between Allen and one Arch Miller, a special ranger, in which it was claimed that Miller struck Allen over the head with a pistol. At about that time in this first difficulty three State patrolmen appeared upon the scene and took Allen in charge, and attempted to remove him from the rodeo grounds. They seemed to experience some difficulty in getting Allen away from the crowd gathered around the scene of the trouble, and one of the patrolmen asked the appellant to assist them. Appellant was the sheriff of Frio County, a neighboring county, and he walked along behind the patrolmen through the crowd. Upon arriving at the patrol car, one patrolman got in front with Mr. Smith, and one patrolman got in the rear seat with Allen. Allen was using vile and obscene language, and, according to the witnesses, was cursing Smith, as well as others. Allen began fighting and striking Smith as well as interfering with the driver of the car, when they told him they were taking him to jail. The driver of the car claims that the conduct of Allen nearly caused the driver to lose control of the patrol car in the heavy traffic, and he turned off the heavily traveled road, endeavoring to find another road to the jail; that he took the wrong road and stopped to turn back, at which point Allen and Smith got out of the car and started fighting. These officers say Smith was fighting with his fists only. Allen says he was getting the best of the fight and Smith began striking him (Allen) with a blackjack and must have struck him forty or fifty times. Eventually they got Allen back in the car, and got him to the jail and into an office. They could not find the key to the jail, and one of the patrolmen went back to the rodeo grounds and got the key to the jail and returned, and they locked Allen up for the night. While waiting for the key to the jail, Allen continued his cursing of Smith, so the witnesses say, and finally he and Smith had another fight, Allen saying that Smith again hit him over the head with a blackjack. In the meantime Allen's wife and some friends had come to the jail to look after Allen, and the officers refused to let the ladies in, they say, on account of the foul language he was using in his drunken condition. Allen's wife, however, says that she saw Smith strike Allen with a blackjack while they were in this office.

There were three counts in the indictment in this case; only

one, however, was presented to the jury, and being the count on which a conviction herein was had. This count reads as follows: "And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present, that heretofore, to-wit, on or about the 24th day of March, 1939, and anterior to the presentment of this indictment, in said county and State, Warren Smith, did then and there unlawfully, with a slung shot, the same being then and there a deadly weapon, commit an aggravated assault and battery in and upon Quanah P. Allen, in this, that the said Warren Smith did then and there, with said slung shot, whip, strike, and bruise the said Quanah P. Allen, by hitting him with said slung shot, on his body and head, in a manner that constituted said slung shot a deadly weapon, against the peace and dignity of the State."

It will be noted therefrom that appellant was charged with striking Allen with a slung shot. The carrying on one's person of a slung shot is denounced by law under Art. 483, P. C., and a slung shot is defined by Webster as "a metal ball of small size with string attached, used by ruffians for striking." We find, however, in the case of Vargas v. State, 79 S. W. (2d) 860, that this court held that a piece of metal inclosed in strips of horsehide or leather, with one end tapering, enabling such instrument to be strapped to the wrist, sustained a conviction for carrying a "slung shot."

Mrs. Q. P. Allen described the instrument which she called a "blackjack" as "some kind of a heavy leather handle with an end to it, about that long and it is very hard, filled with some hard substance, about ten or twelve inches long."

Mr. Allen described a blackjack as "In my opinion, a blackjack is a leather sack with the end of it filled with lead, flexible."

In 8 Corpus Juris, p. 1113, we find a blackjack defined as "A small leather-covered club or billy weighted at the head and having an elastic shaft," this being a quotation from Webster's International Dictionary.

A slung shot is defined in 58 Corpus Juris, p. 773, as "A ball of shot or metal covered with leather, and a band of elastic or leather attached to such ball, and made so that the same can be attached to the wrist or arm of a person; a metal ball of small size with a string attached used for striking; a small mass of metal or stone fixed on a flexible handle, strap or the like, used for a weapon."

It will be observed that with the record in the condition that the witnesses both say, that the appellant struck Allen with a blackjack, and the indictment alleging that Allen was struck with a slung shot, the court charged the jury relative to the use of a slung shot only by appellant upon Allen. After the main charge had been prepared the trial court presented an additional charge to the jury in the following language: "A slung shot is a weapon of offense or defense and becomes a deadly weapon when in the manner of its use it is calculated to produce death or serious bodily injury."

Appellant objected to such charge and presented to the court special charges Nos. 4, 5 and 6, covering a definition of a billy as described in 8 Corpus Juris, p. 1109, and a slung shot as set forth in Geary v. State, 108 S. W. 379.

The court's definition of a slung shot is rather broad, and would take in any weapon of any kind that could be used for either offense or defense, and we think he should have yielded to appellant's requested charge and defined the same in some such language as used by Mr. Webster or the Geary case, supra.

The court throughout his charge refers to a slung shot while the State's witnesses refer to a blackjack. This contradictory matter should be eliminated or harmonized in some way in the event of a new trial herein.

Again we note that although appellant was charged with making an assault upon Q. P. Allen with a deadly weapon, and although the court's charge was objected to because nowhere did such charge define what in law constituted a deadly weapon, and appellant also offered the court a charge thereon, the court failed to thus charge the jury.

Again we find the court's charge on self-defense was objected to as being too restrictive, and appellant submitted to the trial court a charge thereon that seems to us to have been called for by the facts in the case, especially in the portion thereof that dealt with apparent danger as viewed from appellant's standpoint. It is noted that apparent danger was not touched upon by the court's charge.

We think the court should have also defined what was meant in law wherein the charge used the words "serious bodily injury." It appears that there was some question as to whether or not Allen suffered any serious bodily injury in his fight with Smith. The State's witness Dr. Urban testified that Allen "has suffered no serious consequences." This matter was also called

to the trial court's attention by objection and proper requested charge. It also seems that Allen had been hit over the head with a pistol, and with some other person's fist, and kicked while on the ground in an earlier difficulty with one Arch Miller. We think that the court should instruct the jury relative to this first encounter of Allen with another party than appellant, and require them to not take into consideration any evidence of violence upon Allen not shown to have been inflicted by appellant. This matter was also properly and timely called to the trial court's attention, and a proper charge submitted thereon, which charge should have been given. The testimony relative to the injuries inflicted by Arch Miller should not have been admitted.

Appellant testified that he had no intent to injure Allen; that "while I was having these two altercations with Mr. Allen, I didn't intentionally inflict any injury upon him. * * * I didn't fight him when we got in the jail till he jumped on me. * * * I didn't intend to hurt Mr. Allen. * * * I did not at any time fight with Quanah Parker Allen, excepting when he first attacked me."

Mr. Branch says in his Penal Code, p. 914, Sec. 1534: "If the intent to injure is a vital issue in the case, it is error to refuse to give instructions affirmatively submitting the defensive theory," citing cases. See the late cases of Irlbeck v. State, 40 S. W. (2d) 126; Lozano v. State, 83 Texas Crim. Rep. 174, 202 S. W. 510.

Appellant testified that he was a peace officer, the sheriff of Frio County, Texas; that he was attending this rodeo; that he was near the scene of this first difficulty of Allen and was called by the State patrolmen to help them get Allen out of the crowd and take him to jail; that being summoned by them to assist them, he responded, and only was using such force as he deemed necessary in order to assist such officers in arresting Allen and carrying him to jail. He attempted to testify that he knew that such was his duty under the law when thus summoned by a peace officer, which last statement the trial court refused to allow to be made.

Mr. Gilbert, a patrolman, testified:
"Mr. Allen didn't want to go. Q. P. Allen asked me where we were taking him and I told him we were taking him to jail. He objected to going to jail and tried to get loose, but couldn't. Another difficulty we had was quite a few of the people, these visitors, on-lookers, at the rodeo, tried to get us to turn

Quanah Parker Allen loose on the spot, in other words turn him over to their custody. They were strangers; I didn't know who they were, but I later identified one and found out his name. I would say that Quanah Parker Allen was very drunk, angry drunk. He was very drunk, using very abusive, violent, obscene language to address almost every person that he talked to. * * *

"My duties as a highway patrolman consist of any work toward handling traffic, keeping the peace anywhere within the State. Our commission is a State Officer's Commission. We have jurisdiction in any county and on any street and on any property or in any place where a crime or a violation of the law is committed in our presence or sight. Our commission is the same insomuch as the authority, as as an officer is concerned, as that of a Texas Ranger. Our duties are primarily on the highway, handling traffic. We have the authority to make an arrest when the law is violated and a crime is committed. * **

"We were in a hurry to get to the patrol car, however, our pace was very erratic, to say the least because of the strenuous objection on the part of Mr. Allen and the part of some citizens who kept interfering, that is, getting in front and approaching us from behind. The crowd surged around us when we first started out, but after we had gone quite some distance, twenty-five or fifty yards, there were no crowds, only one or two, a few persisted and tried to get Mr. Allen from our custody."

Mr. Jackson, another patrolman, testified: "I took Mr. Smith along because I felt that it might be he could be of some assistance to us. I did take another Patrolman along— Patrolman Manz was in the back seat. Yes, I left two patrolmen on the ground and I and one of the patrolman and Warren Smith took charge of the prisoner."

Again Patrolman Manz testified: "Mr. Jackson requested Warren Smith to accompany Quanah P. Allen, Mr. Jackson and I on this ride from the rodeo grounds to the jail in Crystal City. There are various types of drunk men; their degrees of intoxication vary. I have had quite a bit of experience with drunks. Quanah Parker Allen appeared to be of the raving type that day when we took him into our custody. There are those that laugh and those that are quiet. His state of intoxication probably stimulated his physical condition, if anything. He was uncontrollable. We couldn't do anything with him."

Appellant testified: "I followed the patrolmen and Mr. Allen to the car. When we got to the car, Mr. Allen was cussing and didn't want to get in. They finally put him in. Mr. Manz put him in with Mr. Gilbert's help and Jackson was there, too, and he said, 'Get in and go with us. We will put him in jail.' I got in on the front seat, right handside. Mr. Jackson was driving; Lewis Manz was on the left hand part of the back seat and Allen was on the right hand side. Allen was directly behind me. Those were the only occupants of the car when we left the rodeo grounds. * * *

"I accompanied Patrolman Jackson and Manz with Mr. Allen for the reason that Mr. Jackson asked me to assist them. I didn't refuse to go with Patrolman Manz and Jackson for the simple reason that I could be prosecuted for it. I went with Patrolman Manz and Jackson because I was asked to go."

The trial court's charge was objected to because of its failure to charge on the above phases of appellant's defense, and the appellant requested in writing the following charge: "Gentlemen of the Jury: You are instructed as the law of the case that Article 348 of the Penal Code of the State of Texas provides: 'If any person, being called on by a magistrate or peace officer shall fail or refuse to aid such officer in any manner in which, by law, he may be rightfully called on to aid or assist in the execution of a duty incumbent upon such magistrate or peace officer, he shall be fined not exceeding one hundred dollars.' You are instructed that if the defendant, Warren Smith, on the 24th day of March, 1939, believed that he was being summoned by the arresting officers of Quanah P. Allen to assist them in making such arrest or transporting the prisoner to jail and believed he was obligated to render such assistance or be charged with violation of Article 348 of the Penal Code of the State of Texas, he would be authorized to use such force and means as was reasonably necessary to accomplish such result, and you must view the amount of force and means reasonably necessary from the defendant's viewpoint as the same reasonably appeared to the defendant, Warren Smith, at the time, and in this connection you are instructed that if the defendant, Warren Smith, on 24th day of March, 1939, acted under the belief that he was being summoned by the arresting officers of Quanah P. Allen to assist them in making such arrest or transporting the prisoner to jail and that he believed he was using only such force and means as he believed to be necessary to accomplish such result, the defendant, Warren Smith, is not guilty of the offenses charged in the indictment,

to-wit: Aggravated assault and battery; and you are charged to return a verdict of not guilty."

This charge or one of similar import should have been given. Unquestionably it was appellant's duty to assist these State patrolmen when called upon to aid them in performing the duty of peace officers, and had he refused to do so he would have fallen under the denunciation of Art. 348, Penal Code. This was his reason for being present in this unpleasant matter, and such a charge should have been given to the jury as explanatory of his presence there.

We also find in the record bills of exception to certain testimony, as well as to the trial court's failure to allow certain other testimony to be introduced. These bills are in question and answer form, without a proper certificate of the trial judge, and we can not consider the same.

For the errors herein pointed out this judgment is reversed and the cause remanded.